**Ramon Rico VILLARUZ, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 93–401.**

United States Court of Veterans Appeals.

May 18, 1995.

Richard S. Harrell, Washington, DC, was on the brief for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, David W. Engel, Deputy Asst. Gen. Counsel, and Ralph G. Davis, Washington, DC, were on the brief for Secretary.

Before NEBEKER, Chief Judge, FARLEY, and IVERS, Judges.

IVERS, Judge:

Ramon Rico Villaruz appeals a December 29, 1992, decision of the Board of Veterans' Appeals (BVA or Board) that a forfeiture declared against him under 38 U.S.C. §§ 6103(a) and 6104(a) was not improper. *Ramon Villaruz*, BVA 92-—— (Dec. 29, 1992). The Court has jurisdiction over the case pursuant to 38 U.S.C. § 7252(a). On April 6, 1995, the Court issued a memorandum decision in the appeal. That decision is hereby withdrawn and replaced by this opinion. For the reasons set forth below, the Court vacates the December 1992 decision of the BVA and remands the case for readjudication consistent with this opinion.

## I. Factual Background

The appellant had active service in the Philippines from August 1941 to June 1946. Record (R.) at 88. *But see* R. at 33. According to statements made by the appellant, he joined the Iloilo City Constabulary from December 6, 1943, to September 1, 1944, upon the instructions of a guerilla organization for the purpose of providing information to the guerillas about the enemy. R. at 25. On November 30, 1945, the appellant testified before a Board of Officers hearing. R. at 36–39. The Board of Officers concluded that the appellant had presented "evidence of membership in a recognized guerilla organization" and recommended that he "be retained in service." R. at 39.

On March 24, 1954, the appellant filed an application with a VA regional office (RO) seeking compensation for various disabilities. R. at 65–68. In connection with his application, he also filed a Certificate of Identification (VA Form 8–508a). R. at 60–62. In response to Question 12 on the Certificate, which asked "WHERE DID YOU LIVE DURING THE FOLLOWING YEARS," the form indicated that the appellant was "[i]n the service" from 1942 to 1945. R. at 60. In response to Question 13, which asked "STATE NAMES AND ADDRESSES OF YOUR EMPLOYERS FOR THE FOLLOWING YEARS," the form indicated that the appellant was "with the army" from 1942 to 1945. *Ibid.* In response to Question 19, which asked "DID YOU BELONG TO ANY OF THE FOLLOWING DURING THE JAPANESE OCCUPATION?" and which provided boxes for the Bureau of the Consta-

bulary, the Philippine Constabulary, the Municipal Police Force, and the Manila Defense Corps, the form indicated "not appl[icable]." R. at 61. The Certificate also indicated that a VA employee, Ida L. Roxas, had read the questions and answers on the Certificate to the appellant. R. at 62.

On June 21, 1954, the RO informed the appellant that several of his answers on the Certificate of Identification were inaccurate because the appellant had apparently served with the Bureau of the Constabulary in Iloilo City, the Philippines, during the Japanese occupation. R. at 72–73. In an August 18, 1954, sworn affidavit, the appellant wrote:

> [T]here was no intent on my part to withhold information in the Certificate of Identification ... for the reason that this form was filled at the branch office of the USVA at Iloilo City by a lady clerk who, upon my query as to whether we should fill out completely the answer to question No. 13 and why "Not Appl" was written as answer to question No. 19, stated that the answers to such questions No. 13 and 19 were not necessary inasmuch as the office of the USVA had complete records regarding my case. There was no deliberate intent on the part of the undersigned to make any wilful misrepresentation or mis-statement of facts regarding my service with the Bureau of Constabulary inasmuch as I had filed a processing affidavit concerning my service with the City Constabulary upon my return to Military control at Leyte, Philippines....

R. at 75. In an October 26, 1954, memorandum, the RO recommended that the case be forwarded to the Central Committee on Waivers and Forfeitures (the Committee). R. at 79–80. In that memorandum, the RO adjudication officer concluded:

> The evidence of record shows that claimant rendered service in two entities which assisted the Japanese in the apprehension of guerilla elements—the City police force from Jun 43 to Nov 43 and in the BC [Bureau of the Constabulary] from Dec 43 to Sep 44 and that he left the service at

which time Iloilo was subjected to an intense bombing raid in preparation for the landing of American Forces in the Philippines. The evidence further tends to indicate that subject knowingly withheld from the VA his service in the police force and the BC as well as the fact that he was tried by a [Loyalty Status Board] because of his service under the enemy.

R. at 80. On February 9, 1956, the Committee declared that the appellant had forfeited the right to VA benefits on the grounds that he had made false or fraudulent statements to VA and that he had rendered assistance to the enemy. R. at 91–93.

In a February 5, 1957, letter to the VA Administrator, the appellant wrote that the Committee's finding was in contrast to the finding of the Loyalty Status Board, that the proceedings of the Loyalty Status Board were a matter of public record, that his responses that certain questions on the Certificate of Identification (VA Form 8–508a) were "not applicable" and were therefore not fraudulent, and that his service with the Iloilo City Police and the Bureau of the Constabulary was not voluntary. R. at 101–02. On May 12, 1958, the Board issued a decision that the appellant had forfeited the right to VA benefits, but that decision is not in the record on appeal or in the appellant's VA claims file. *See* R. at 172; Supplemental (Suppl.) R. at 4.

In 1983, the appellant sought to reopen the claim for revocation of the forfeiture. In an April 9, 1983, letter, he indicated that he had answered "not applicable" to Question 19 on the Certificate of Identification because the Iloilo City Constabulary was not listed in the responses to that question, because the police force was the creation of the local government and was responsible for maintaining peace and order in the city, and because entrance into the police force was mandatory for all young men residing in Iloilo and was therefore not voluntary. R. at 111. On August 6, 1984, the RO informed the appellant that the May 1958 Board decision constituted the final administrative denial of his claim. R. at 131.

In a March 11, 1987, affidavit, Norberto Baylen wrote that he had been the Executive Officer of the District Intelligence Division (G–2), Guerilla Force, 6th Military District, Panay Island, that the appellant had been on "active duty" with this unit from October 1943 to April 1945 as a special agent under Lt. Sulpicio D. Palma, and that the appellant "had submitted weekly reports of high military value regarding the enemy activities." R. at 133.

On November 13, 1989, the appellant sought to reopen the claim for revocation of the forfeiture. R. at 144. On March 30, 1990, the RO informed the appellant that he had not submitted new and material evidence. R. at 148. On August 8, 1991, the Board issued a decision that the appellant had submitted new and material evidence sufficient to reopen his claim and remanded the claim to the RO for a de novo review of all the evidence. R. at 173–74. On April 3, 1992, the RO denied a revocation of the forfeiture decision. R. at 180.

In a May 23, 1992, letter, the appellant wrote:

> When I reported to the Military Control in Leyte in April 1945 I stated in my processing affidavit that I was ordered by Lt. del Rosario thru one of his agents to join the Iloilo City Police in July 1943 whose duty and responsibility was to maintain Peace and Order so that I could work effectively against the enemy and to protect myself from Filipino spies working under the Japanese Military Police. Members of the City Police were not issued any firearm except for a badge for identification while in the service. I had not rendered any assistance to the enemy of the United States. I had not participated in any operation against the guerillas inside or outside Iloilo City. I did not bear arms or engage in act[s] which rendered assistance to an enemy of ... the United States. I had not taken an oath of allegiance to the Japanese Government. Members of the [sic] received their salary from the city government and they were not assigned to duties outside the city. I was assigned in the office of the desk sergeant because I was still sick of malaria and beri-beri. The Iloilo City Police was made[ ] or renamed City Constabulary in December 1943. Members were appointed by the Mayor, a Filipino.
>
> I have not been disloyal to the U.S. Army inspite of my being a member of the Iloilo City Constabulary. I had submitted weekly vital intelligence reports and information to my guerila unit. On September 2, 1944 I escaped from the city because I was afraid that I would be discovered and be killed by the enemy and reported to my guerila officer in Dumangas, Iloilo the area of operation of said unit.

R. at 183. On December 29, 1992, the Board issued a decision not to revoke the forfeiture of VA benefits under 38 U.S.C. §§ 6103(a) and 6104(a). *Villaruz*, BVA 92– ——, at 10.

## II. Analysis

### A. *Review for New and Material Evidence*

■ The appellant's claim for revocation of a forfeiture was previously denied by a final BVA decision in May 1958. *See* R. at 172; Suppl.R. at 4. Pursuant to 38 U.S.C. § 5108, the Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. *See* 38 U.S.C. § 7104(b); *Stanton v. Brown*, 5 Vet. App. 563, 566 (1993). On claims to reopen previously and finally disallowed claims, the BVA must conduct a two-part analysis. *See Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material." *See Colvin v. Derwinski*, 1 Vet. App. 171, 174 (1991). "New evidence" is evidence that is not "merely cumulative" of other evidence on the record. *Ibid.* Evidence is "material" where it is "relevant to and probative of the issue at hand" and where it is of "sufficient weight or signifi-

cance that there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Sklar v. Brown,* 5 Vet.App. 140, 145 (1993); *Cox v. Brown,* 5 Vet.App. 95, 98 (1993); *Colvin,* 1 Vet.App. at 174. Second, if the BVA determines that the evidence is "new and material," it must re-open the claim and "evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old." *Manio,* 1 Vet. App. at 145. Whether evidence is "new and material" is a conclusion of law which this Court reviews de novo under 38 U.S.C. § 7261(a)(1). *See Masors v. Derwinski,* 2 Vet.App. 181, 185 (1992). The Court reviews the evidence in light of the relevant authorizing statutes and regulations. *See Chavarria v. Brown,* 5 Vet.App. 468, 471 (1993) (Court examined evidence in light of statutes and regulations to determine whether appellant's new evidence was material); *Lizaso v. Brown,* 5 Vet.App. 380, 385 (1993) (same for claim to reopen revocation of forfeiture under 38 U.S.C. § 6104(a)).

■ In this case, the Board decided in May 1958 that the appellant had forfeited all rights, claims, and benefits under all laws administered by VA because he had rendered assistance to the enemy and had made false statements in connection with his application for compensation in March 1954. Suppl.R. at 4.

The pertinent statutes provide as follows:

Whoever knowingly makes or causes to be made or conspires, combines, aids, or assists in, agrees to, arranges for, or in any way procures the making or presentation of a false or fraudulent affidavit, declaration, certificate, statement, voucher, or paper, concerning any claim for benefits under any of the laws administered by the Secretary (except laws pertaining to insurance benefits) shall forfeit all rights, claims, and benefits under all laws administered by the Secretary (except laws pertaining to insurance benefits).

38 U.S.C. § 6103(a). In addition, 38 U.S.C. § 6104(a) provides as follows:

Any person shown by evidence satisfactory to the Secretary to be guilty of mutiny, treason, sabotage, or rendering assistance to an enemy of the United States or of its allies shall forfeit all accrued or future gratuitous benefits under laws administered by the Secretary.

Therefore, in seeking to reopen the Board's May 1958 decision, the appellant would have had to produce new and material evidence bearing directly on whether he had acted in a false or fraudulent manner in connection with his efforts to obtain compensation or whether he had rendered assistance to an enemy during World War II.

This case is complicated somewhat by the fact that the May 1958 BVA decision is missing from the record on appeal and from the appellant's VA claims file. As the BVA correctly noted, it is impossible for the Court to determine with any precision what documents were before the Board at the time of its decision in May 1958. In addition, the appellant has submitted an affidavit from Mr. Norberto Baylen, which was prepared in March 1987. R. at 133. This affidavit could not have been submitted in connection with the May 1958 BVA decision and relates to the issue of having rendered assistance to the enemy as a member of the Iloilo City Police Force and the Bureau of the Constabulary. Therefore, in light of both the circumstances and the newly submitted evidence, the Court concludes that the Board did not err in reopening the claim for revocation of the forfeiture.

### B. *Review Under Clearly Erroneous Standard of Review*

■ The Court reviews the Board's adjudication of a claim that has been reopened under the "clearly erroneous" standard of review. *See Stanton,* 5 Vet.App. at 567. The Board must base its decisions on "all evidence and material of record," 38 U.S.C. § 7104(a), and must provide a "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record," 38 U.S.C.

§ 7104(d)(1). *See Douglas v. Derwinski*, 2 Vet.App. 435, 438–39 (1992) (en banc), *vacating in part on other grounds*, 2 Vet.App. 103 (1992); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1990). Pursuant to these statutory requirements, the Board must "account for the evidence which it finds to be persuasive or unpersuasive," and provide reasons or bases for rejecting evidence submitted by or on behalf of the claimant. *Gilbert*, 1 Vet. App. at 57.

Although the Board listed and described all of the evidence, the Board did not "account for the evidence which it [found] to be persuasive or unpersuasive," and provide reasons or bases for rejecting the appellant's evidence submitted in support of his claim. *Ibid.*

With respect to the aspect of the forfeiture involving 38 U.S.C. § 6104(a), the Board stated:

> Although the appellant has maintained that he had been instructed to join the city police force and the Bureau of the Constabulary by his guerilla unit in order to provide information regarding enemy activities to the guerilla unit, the appellant does not have any recognized guerilla service. The Board notes that the appellant did not leave the Bureau of the Constabulary until September 1944 at which time the City of Iloilo had been subjected to intense bombing raids in preparation for the landing of American forces in the Philippines.

*Villaruz*, BVA 92– ––, at 8–9. Although the Board rejected the credibility of the appellant on the basis that he did not have any recognized guerilla service, it did not adequately discuss his contention, supported by the numerous affidavits in the record, that he was ordered by certain guerilla officials to join the Iloilo City Police, which eventually became the Bureau of the Constabulary. In addition, while certainly aware of the Loyalty Status Board proceedings and findings, *see Villaruz*, BVA 92– ––, at 6, the Board did not provide any reasons or bases for rejecting the Loyalty Status Board's finding that the appellant should be retained in service. In effect, the Loyalty Status Board found that the appellant had not rendered assistance to the enemy. The Board was required to assess evidence that is so highly relevant to the appellant's claim.

With respect to the aspect of the forfeiture under 38 U.S.C. § 6103(a), the Board stated:

> The appellant has maintained that he had no intent to submit false or fraudulent information since a clerk at a VA branch office had informed him that the answers regarding those questions were not necessary since the VA already had complete records regarding his case. He has maintained that he had completed a processing affidavit which reflected his service with the city constabulary. The loyalty board proceedings were after the 1945 processing affidavit and the appellant could not reasonably have assumed such information was inapplicable.

*Villaruz*, BVA 92– ––, at 9. The Board, however, neglected to account for the fact that the appellant had applied for compensation at the RO in 1954, well after the Loyalty Status Board proceedings and all other processing affidavits with respect to his service with the Iloilo City Police and the Bureau of the Constabulary had been completed and made part of the public record. Therefore, the Board's reasons or bases did not address the appellant's contention that he was under the impression that his service with those organizations was a matter of public record with VA and that further responses on the Certificate of Identification were not needed. Indeed, that Certificate of Identification reflects that the questions *and* the answers were *read to* the appellant by Ida L. Roxas, an RO employee. R. at 62. In addition, the appellant did in fact treat one other question differently. Asked whether he had been a member of certain specified pro-Japanese or anti-American-Filipino organizations, the appellant (ostensibly through Ms. Roxas) responded, "Never." R. at 60. This response contrasts sharply with the answer "not appl[icable]" provided with respect to whether he had ever served with the Bureau of the

Constabulary. R. at 61. The appellant's contention appears to be further supported by another answer appearing on the Certificate of Identification. The appellant again answered "not appl[icable]" in response to the question "DID YOU AT ANY TIME OR IN ANY WAY ASSIST ANY GUERILLA UNITS OR THE RESISTANCE MOVEMENT?" R. at 61. Although the Board stated that the appellant could not reasonably have assumed that such information was inapplicable, the Board did not address the appellant's own contention and belief that he had been cleared by the Loyalty Status Board.

In his brief, the Secretary seeks to cast doubts on the appellant's credibility by focusing on the various explanations and accounts given by the appellant to VA and others over the years. Nevertheless, the task of assessing credibility belongs to the Board, particularly on a matter involving significant issues such as the claim that the appellant rendered assistance to the enemy and then attempted to deceive VA about his service. *See Owens v. Brown,* 7 Vet.App. 429, 433 (1995) ("it is the responsibility of the BVA, not this Court, to assess the credibility and weight to be given to the evidence"). In fulfilling this responsibility, the Board must still account for the evidence that is both favorable and unfavorable to the appellant's claim and must provide reasons or bases for its findings regarding the credibility of that evidence. *See McGinty v. Brown,* 4 Vet.App. 428, 432 (1993); *Hatlestad v. Derwinski,* 1 Vet.App. 164, 170 (1991). Therefore, the Court will remand the appellant's claim for an assessment of *all* the evidence, to include reasons or bases regarding credibility.

### III. Conclusion

Accordingly, upon consideration of the record, the appellant's brief and reply brief, and the Secretary's brief, the Court VACATES the December 1992 decision of the BVA and REMANDS the case for readjudication consistent with this opinion.