Carmen R. JANDOC, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 93–386.

United States Court of Veterans Appeals.

Jan. 11, 1996.

Carmen R. Jandoc, pro se.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; Adrienne Koerber, Deputy Assistant General Counsel; and Leonard J. Selfon were on the brief, for appellee.

Before NEBEKER, Chief Judge, and MANKIN and STEINBERG, Judges.

STEINBERG, Judge:

The pro se appellant, Carmen R. Jandoc, appeals from a February 5, 1993, decision by the Board of Veterans' Appeals (BVA or Board) finding no new and material evidence to reopen a claim for revocation of a forfeiture of benefits, and finding a claim for improved death pension benefits to be not well grounded. Record (R.) at 5–7. Both parties have filed briefs. Because this case presents legal issues of first impression, single-judge summary disposition is not appropriate. *See Frankel v. Derwinski,* 1 Vet.App. 23, 25–26 (1990). For the reasons that follow, the Court will affirm the Board's decision.

## I. Background

The appellant is the widow of World War II veteran Antonio Jandoc, who had active service in the U.S. Navy from May 1919 to May 1925, from August 1925 to August 1931, from August 1931 to August 1935, from August 1935 to August 1936, and from August 1941 to June 1946; and was officially listed as "missing in action" between May 1942 and April 1945. R. at 6, 19, 44. The veteran assumed reserve status in June 1946. R. at 17. In August 1949, he was retired after completing 30 years of honorable service with the Navy (R. at 45) and began receiving retirement pay (R. at 52, 59).

In March 1976, the veteran filed with a VA regional office (RO) an Income and Net Worth Statement in support of his claim for VA pension benefits. R. at 63, 137. In December 1976, the VARO began an investigation to determine whether the veteran had served as a member of the Bureau of Constabulary (BC). R. at 101. In the decision on appeal, the Board concluded that the BC was a "Japanese sponsored component of the Imperial Japanese Military Forces, during the enemy occupation of the Philippines, and was of assistance to the Imperial Japanese Government". R. at 6. In January 1977, the RO deposed Carlos Pacquing, who testified under oath that he and the veteran had been members of the same BC outfit during the war, although he "could not recall [the veteran's] activities in the BC", and he testified generally as to the BC's military nature. R. at 104. A VA field examiner described Mr. Pacquing "as a reliable witness [who] appeared to have testified truthfully". R. at 107.

Given this new information, VA deposed the veteran in February 1977. R. at 110. He admitted under oath that he had been a private in the BC between 1942 and 1944, had been issued a weapon and uniform, and had performed "guard duties". R. at 110–11. He asserted, however, that he "was never assigned on patrol duties" because of his poor health, was "unwilling to serve", had not escaped out of fear for his life, had not joined the Philippine guerrilla forces because they could not be "reached . . . at that time", and had earlier denied any involvement with the BC because of his being "forced to join" and thus "consider[ing] it a non-service with the Japanese". R. at 111–12. The VA field examiner noted that "[b]y and large, his declaration appeared to be reliable." R. at 115. In an April 1977 letter, the veteran reiterated that he had been forced to join the BC "through intimidation and pressure beyond

my control"; he also denied taking an oath of allegiance to the Imperial Japanese Government, or committing "treason or any act [inimical] to the interests" of the Philippines or the United States. R. at 125–27.

In July 1977, the RO informed the veteran that his benefits were being forfeited, because "whatever duties you were involved with or engaged in as a member of the [BC], you took part in the overall mission of the Japanese Military Forces to wage war against the United States and its allies." R. at 133. In support of its position, the RO stated that BC members were never forced to join, but rather were "carefully screened and selected from voluntary applicants"; it determined that the veteran "had ample opportunities to escape"; and it stated that "all members of the [BC] who underwent academy training, as you did, were required to take an oath of allegiance to the Japanese Imperial Government." R. at 134. The veteran died in February 1990. R. at 148.

In an affidavit apparently executed in April 1990, Jose C. Almazan stated that he knew both the veteran and "Carlos Paquing", that the veteran never "was or had been a member of the [BC]", that many BC members "were forced against their will to undergo training and become members", and that "Carlos Paquing could not have stated in 1977 that he was a member of the [BC] because at that time he was already dead." R. at 150.

In August 1990, the appellant applied for VA dependency and indemnity compensation (DIC) or death pension. R. at 153. The RO denied her claim in September 1990, on the basis of the previous forfeiture proceedings. R. at 158. A July 1977 affidavit by Laureano P. Bistoyong, submitted to the RO in September 1990 by the appellant's legal counsel, asserted that the veteran had been loyal to the United States and allied military forces, and that he had been active in the guerrilla forces in 1944 and 1945. R. at 163, 165. In October 1990, the appellant filed a Notice of Disagreement. R. at 171.

After the Board had remanded the case in September 1991 for confirmation of the veteran's service dates (R. at 181–82), the RO confirmed that the veteran's last period of active duty had ended in June 1946 (R. at 185). The RO issued a Supplemental Statement of the Case in March 1992. R. at 190. In an April 1992 letter to the RO, the appellant noted that the veteran had never been convicted of any disloyal behavior and had continued to receive U.S. Navy retired pay throughout his life. R. at 197. She also submitted copies of his 1946 and 1949 discharge orders. R. at 201, 203. In a March 1993 affidavit submitted to the RO, Benedicto Pacquing stated that he was Carlos Pacquing's brother and that Carlos had died "sometime in the year 1943". R. at 211. Affidavits submitted that month by Bernardino A. Silapan and Mariano J. Javines documented the veteran's guerrilla service in 1944 and 1945. R. at 218, 220.

In the February 5, 1993, BVA decision here on appeal, the Board denied the appellant's claim to reopen the prior denial of revocation of forfeiture, finding no new and material evidence, and denied her claim for improved death pension benefits. R. at 5, 13. The Board found that the RO's July 1977 decision was final, that additional evidence submitted on the matter merely corroborated evidence already of record in 1977, and that the events leading to forfeiture took place during the veteran's final active service period of 1941 to 1946. R. at 7. As to the claim to reopen, the Board found that "[t]he evidence previously of record showed that the veteran was a member of the BC, the purpose of which organization was to assist the Imperial Japanese Government", and that the "new evidence shows nothing more." R. at 11. The Board then concluded that the appellant's claim for improved death pension benefits was not well grounded, finding that the claim was barred by statute because the underlying VA benefits had been forfeited. R. at 12. A timely appeal to this Court followed.

## II. Analysis

### A. *Generally Applicable Law*

Section 5107(a) of title 38, U.S.Code, provides in pertinent part: "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to

justify a belief by a fair and impartial individual that the claim is well grounded." The Court has defined a "well[-]grounded claim" as "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a) ]." *Murphy v. Derwinski,* 1 Vet. App. 78, 81 (1990). In addition, the Court held in *Tirpak v. Derwinski,* 2 Vet.App. 609, 611 (1992) (quoting section 5107(a)), that to be well grounded a claim must be accompanied by supportive evidence and that such evidence "must 'justify a belief by a fair and impartial individual' that the claim is plausible."

■ The truthfulness of evidence is generally presumed in determining whether a claim is well grounded. *See Robinette v. Brown,* 8 Vet.App. 69, 75–76 (1995); *King v. Brown,* 5 Vet.App. 19, 21 (1993). A Board determination whether a claim is well grounded is a conclusion of law subject to de novo review by the Court under 38 U.S.C. § 7261(a)(1). *See Grivois v. Brown,* 6 Vet. App. 136, 139 (1994); *Grottveit v. Brown,* 5 Vet.App. 91, 92 (1993).

■ The Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to the basis for the denial of that claim. *See* 38 U.S.C. §§ 5108, 7104(b). On a claim to reopen a previously and finally disallowed claim, the BVA must conduct a "two-step analysis" under section 5108. *Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is new and material "when viewed in the context of all the evidence, both new and old", *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991), and when "the credibility of the [new] evidence" is presumed, *Justus v. Principi,* 3 Vet.App. 510, 513 (1992). Second, if the evidence is new and material, the Board must then review it on the merits "in the context of the other evidence of record" to determine whether the prior disposition of the claim should be altered. *Jones (McArthur) v. Derwinski,* 1 Vet.App. 210, 215 (1991).

The Court has synthesized the applicable law as follows:

"New evidence" is evidence that is not "merely cumulative" of other evidence on the record. [*Colvin, supra* ]. Evidence is "material" where it is relevant to and probative of the issue at hand and where there is a reasonable possibility that, when viewed in the context of all the evidence, both new and old, it would change the outcome.

*Blackburn v. Brown,* 8 Vet.App. 97, 102 (1995); *see also Cox (Billy) v. Brown,* 5 Vet.App. 95, 98 (1993). This requirement of new and material evidence contrasts with the situation generally prevailing as to a survivor's death benefits claim, which this Court has held is a claim to be "decided without regard to any prior disposition of those issues during the veteran's lifetime." *Zevalkink v. Brown,* 6 Vet.App. 483, 491 (1994) (quoting 38 C.F.R. § 20.1106 (1993) and holding that that regulation was not applicable to accrued-benefits claim).

■ A Board determination as to whether evidence is "new and material" is a question of law subject to de novo review by this Court under 38 U.S.C. § 7261(a)(1), *see Masors v. Derwinski,* 2 Vet.App. 181, 185 (1992); *Jones,* 1 Vet.App. at 213; *Colvin, supra,* not subject to an "arbitrary and capricious" standard of review, as the Secretary asserts. *See* Secretary's Brief (Br.) at 7, 15–16, 19. In determining whether evidence is material, relevant statutes and regulations must be examined. *See Chavarria v. Brown,* 5 Vet.App. 468, 471 (1993). Section 6104(a) and (c) of title 38, U.S.Code, provide as follows:

(a) Any person shown by evidence satisfactory to the Secretary to be guilty of mutiny, treason, sabotage, or rendering assistance to an enemy of the United States or of its allies shall forfeit all accrued or future gratuitous benefits under laws administered by the Secretary.

. . . .

(c) In the case of any forfeiture under this section there shall be no authority after September 1, 1959[,] . . . (2) to make an award to any person of gratuitous benefits based on any period of military, naval,

or air service commencing before the date of commission of the offense.

38 U.S.C. § 6104(a), (c)(2).

### B. Application of Law to Facts

**1. New and material evidence.** The July 1977 final RO decision forfeiting the veteran's benefits was made under 38 U.S.C. § 3504(a), which has been recodified as 38 U.S.C. § 6104(a). R. at 137–41. Under 38 C.F.R. § 20.1106 (1994), a survivor's claim for death benefits is usually to be decided without regard to any prior dispositions of the pertinent issues during the veteran's lifetime, because the survivor's claim is new. *See, e.g., Landicho v. Brown,* 7 Vet.App. 42, 52 (1994) (holding that veteran's disability-compensation claims "died with him"); *Zevalkink, supra.* However, § 20.1106 provides otherwise as to certain forfeitures as follows:

> *Except with respect to* benefits under the provisions of 38 U.S.C. [§] 1318 and *certain cases involving individuals whose [VA] benefits have been forfeited for treason or for subversive activities under the provisions of 38 U.S.C. [§§] 6104 and 6105,* issues involved in a survivor's claim for death benefits will be decided without regard to any prior disposition of those issues during the veteran's lifetime.

38 C.F.R. § 20.1106 (emphasis added).

■ The July 1977 RO decision found that "the records establish beyond a reasonable doubt that the veteran's [BC membership] was of assistance to the Imperial Japanese Government in violation of the provisions of [section 6104(a) ]". R. at 141. In its February 1993 decision, the Board cited this prior determination in concluding that the appellant's death-benefits claim failed for want of new and material evidence, although it did not refer to the provisions of § 20.1106 and therefore did not explain its apparent assumption that the appellant's claim was not entitled to de novo consideration. R. at 11. For the reasons that follow, the Court holds that, although the Board's failure to cite and discuss § 20.1106 was error, such error was not prejudicial to the appellant, because the error did not alter or affect the outcome of the appellant's case; and further holds that the Board did not err in making its determi-

nation that new and material evidence was necessary to reopen the appellant's death-benefits claim. *See* 38 U.S.C. § 7261(b) (Court shall take due account of rule of prejudicial error); *Yabut v. Brown,* 6 Vet.App. 79, 83 (1993); *Godwin v. Derwinski,* 1 Vet. App. 419, 425 (1991).

■ In this case, the appellant's claim for revocation of a forfeiture of benefits is reviewed as a claim to reopen, rather than as an original claim, because § 20.1106 requires that in a case where the forfeiture was made pursuant to 38 U.S.C. §§ 6104 and 6105, the issues involved in a survivor's claim for death benefits will be decided *with* regard to prior dispositions of those issues. In holding that any prior dispositions of the issues involved must be taken into account when deciding a survivor's claim for death benefits, the Court has considered whether the term "certain cases" in § 20.1106 carries any meaning which would give the Secretary discretion to exclude some cases from the exception in the regulation's general injunction that death-benefits claims be decided without regard to prior dispositions during the veteran's lifetime. The regulatory history of 38 C.F.R. § 20.1106 shows that the regulation was based on the former 38 C.F.R. § 19.196 (1991), which had provided an unqualified rule, as follows: "Issues involved in a survivor's claim for death benefits will be decided without regard to any prior disposition of those issues during the veteran's lifetime." 38 C.F.R. § 19.196; *see* 54 Fed.Reg. 34,334, 34,338 (1989). This section was removed when part 20 was added to title 38, Code of Federal Regulations, in 1992. *See* 57 Fed. Reg. 4088 (1992); 54 Fed.Reg. 34,334, 34,335, 34,338 (1989). The current form of § 20.1106, proposed in 1989 (54 Fed.Reg. 34,334, 34,362) and then adopted in 1992, contained the term "certain cases" with no comment as to the reason for that language. However, the supplementary information preceding the regulation did note that the regulation was prescribed for the purpose of recognizing the effect of the enactment in 1959 of 38 U.S.C. §§ 3504(c) and 3505(a) (now codified as 38 U.S.C. §§ 6104(c) and 6105(a)). 54 Fed.Reg. 34,334, 34,338 (1989). The Court is satisfied that the regulation was

adopted with no intent to afford the Secretary discretion and that the term "certain cases" should properly be read to mean "those cases".

Assuming, as *Glynn v. Brown*, 6 Vet.App. 523, 528–29 (1994), stated, that in determining whether new and material evidence exists all relevant evidence submitted after the last final decision on the merits must be considered, the Court concludes that there is no new and material evidence even if all the evidence submitted since the July 1977 RO decision was considered. Evidence submitted since the July 1977 decision consists of testimony and service records. R. at 3–4. Although much of this material documents the honorable service given by the veteran on behalf of the United States and the Philippines, none bears directly on the veteran's admitted 1942–44 service with the BC, and thus none can be considered material. *See Villaruz v. Brown*, 7 Vet.App. 561, 565 (1995) (when seeking to reopen forfeiture claim, appellant must "produce new and material evidence bearing directly on whether" veteran "rendered assistance to an enemy during World War II"); *Lizaso v. Brown*, 5 Vet. App. 380, 385 (1993) (claimant failed to submit new evidence in conjunction with claim to revoke forfeiture under § 6104).

■ The sworn testimony does not supply evidence probative to the appellant's claim. Affidavits from Messrs. Almazan, Bistoyong, Silapan, and Javines documenting the veteran's guerrilla service refer only to his activities in 1944 and 1945. R. at 150, 163, 218, 220. They are not relevant to an assessment of his BC activities between 1942 and 1944, and thus are not material. *See Blackburn*, 8 Vet.App. at 102 ("[e]vidence is 'material' where it is relevant to and probative of the issue at hand"); *see also Cox, supra.* Mr. Almazan's testimony in his affidavit about "forced" service in the BC does not create a reasonable possibility of changing the July 1977 RO determination that the veteran "took part in the overall mission of the Japanese Military Forces to wage war against the United States and its allies", because that testimony did not specifically assert that the veteran in this case had been forced to participate in the BC but only that,

generally, many BC members "were forced" to participate against their wills. R. at 150. The affidavits from Messrs. Almazan and Pacquing, alleging that Carlos Pacquing died during World War II and thus could not have placed the veteran with the BC, are likewise not material given that the veteran admitted under oath to having served in the BC. R. at 110. *See Blackburn, Villaruz,* and *Cox,* all *supra.*

■ The other evidence added to the record is similarly not new and material. The .service records submitted address the veteran's dates of active and inactive duty with the Navy; most are duplicates of documents already of record, and are not material because they do not shed light on his activities with the BC between 1942 and 1944. *Compare* R. at 15, 17, 19, 28, 41, 44–45, 47 *with* R. at 160–61, 185, 195, 201, 203; *see Kightly v. Brown*, 6 Vet.App. 200, 205 (1994) (holding that material submitted by appellant that is "cumulative" of evidence previously of record is not new); *Colvin, supra.*

The appellant asserts that the RO's forfeiture action was invalid because the veteran was never ***convicted*** of disloyal activity. R. at 197 (emphasis added). However, section 6104(a) provides that forfeiture actions may proceed against "[a]ny person ***shown by evidence satisfactory to the Secretary*** to be guilty of ... rendering assistance to an enemy of the United States or of its allies". 38 U.S.C. § 6104(a) (emphasis added). Therefore, the appellant's argument does not address the statutory requirement and is not material. *See Blackburn, Villaruz,* and *Cox,* all *supra.*

Accordingly, the Court will affirm the Board's decision that there was no new and material evidence to reopen the appellant's claim.

■ *2. Death pension claim.* The Board found: "[T]he effect of the forfeiture under § 6104(c), clearly bars the appellant from receiving any gratuitous benefits through the service of her deceased husband. Consequently ... we conclude that the appellant's claim is not well grounded and must of necessity fail." R. at 12. Both parties have conceded, and VA has confirmed, that

the veteran's final tour of duty began before the BC involvement in question, and ended in June 1946; the dates are not in dispute. R. at 223, Br. at 17; cf. *Duro v. Derwinski*, 2 Vet.App. 530, 532 (1992) (findings by service department verifying veteran's service dates "are binding on ... VA for purposes of establishing service in the U.S. Armed Forces"). Because the appellant's claim was filed after September 1, 1959, the cutoff date provided by 38 U.S.C. § 6104(c)(2) (quoted in part II.A. above), her claim is statutorily barred by that section from being successful. *Cf. Villaruz, supra.* Thus, the appellant has not attained the status of an eligible claimant. *See Aguilar v. Derwinski*, 2 Vet.App. 21, 23 (1991).

The Board's conclusion that the appellant's claim was not well grounded under 38 U.S.C. § 5107(a), R. at 12, is technically erroneous. In *Sabonis v. Brown*, the Court held that where the law and not the evidence is dispositive the Board should deny the claim on the ground of the lack of legal merit or the lack of entitlement under the law. *Sabonis v. Brown*, 6 Vet.App. 426, 430 (1994); *see also Giancaterino v. Brown*, 7 Vet.App. 555, 561 (1995) (construing *Sabonis, supra* ). In the present case, the appellant's claim lacks legal merit because of the statutory restriction in section 6104(c)(2), and thus the Board, "where the law and not the evidence is dispositive", should have denied the claim or terminated the appeal not because it was "not well grounded", but "because of the absence of legal merit or the lack of entitlement under the law". *Giancaterino, supra* (quoting *Sabonis, supra* ). Despite the Board's error, "this imprecision in the use of a term of art is not a basis, in and of itself, for a remand." *Villaruz, supra* (quoting *Florentino v. Brown*, 7 Vet.App. 369, 370 (1995)). Accordingly, the Court will affirm the Board's decision disallowing the appellant's claim.

### III.  Conclusion

Upon consideration of the record, the appellant's informal brief, and the Secretary's brief, the Court holds that the appellant has not demonstrated that the BVA committed error—in its conclusions of law or articulation of reasons or bases—that would warrant remand or reversal under 38 U.S.C. §§ 5107(a), 5108, 6104(a), (c), 7104(a), (d)(1), or 7105(c). Therefore, the Court affirms the February 5, 1993, BVA decision.

AFFIRMED.