FARLEY, Judge,
with whom NEBEKER, Chief Judge, and IVERS, Judge, join,
dissenting:
The issue presented in this appeal is governed by clearly defined principles of statutory construction. Our decision must begin and end with the unambiguous language of 38 U.S.C. § 6103. The intent of Congress is clearly set out in the statute and that must be the end of the matter because the Court and VA must give full “effect to the unambiguously expressed intent of Congress.” See Chevron v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The majority has chosen to ignore this commandment by the Supreme Court and therefore I must dissent.
I.
The expression of our societal gratitude to those who served and sacrificed in our common defense is a tradition which predates even the founding of our nation. In 1636, the Plymouth Colony in Massachusetts provided that a soldier who returned “maimed would thereafter be maintained competently for the rest of his life at the expense of the public treasury.” See Veterans Benefits and Judicial Review: Historical Antecedents and the Development of the American System (Fed. Research Div. of the Library of Congress, Washington, D.C., March 1992). When in 1865 President Abraham Lincoln committed the nation “to care for him who shall have borne the battle and his widow and his orphan” in his Second Inaugural Address, he was both following old precedent and creating new. After World War I, World War II, Korea, Vietnam, and more recent conflicts, a grateful nation has provided its veterans with home loans and educational benefits, medical care and pensions, disability and death compensation, as well as assistance to their widows and dependents. The rights and benefits established by title 38, United States Code, may be available to a veteran and his or her family members depending upon, inter alia, the time, length, and character of the veteran’s service, the severity of any resulting disability, and the specific relationships between the veteran and his or her family members. Some of these substantive benefits, such as home loan guarantees and education, require only proof of military service; others require determinations as to the degree of disability and whether it was incurred or aggravated in service. Still others are dependent upon the amount of current income or whether a death was service connected.
In addition to these substantive benefits, other sections of title 38 provide significant procedural relaxations and red-tape-cutting devices which are available only to veterans and to those entitled to benefits because of a relationship to a veteran. For example, once a veteran has established a well-grounded claim, the Secretary of Veterans Affairs is obligated by statute to assist the veteran in the development of the facts pertinent to his claim. 38 U.S.C. § 5107(a). Indeed, the entire claims process, at least until an appeal is filed with this Court, is non-adversarial: the Secretary and VA work for veterans. Pursuant to 38 U.S.C. § 5107(b), veterans enjoy the “benefit of the doubt” with regard to factual issues material to their claims. This unique standard of proof is unlike that available to any other civil plaintiff or claimant: a veteran prevails if the evidence is in equipoise. See Gilbert v. Derwinski, 1 Vet.App. 49, 53-56 (1990). A veteran is thus relieved of the burden of having to prove his or her claim by the traditional preponderance-of-the-evidence test used routinely in civil and administrative matters. Id.; see, e.g., Jones ex rel. *333 Jones v. Chater, 101 F.3d 509, 512 (7th Cir.1996) (in Social Security benefits cases, “preponderance of the evidence is the proper standard, as it is the default standard in civil and administrative proceedings”); Bender v. Clark, 744 F.2d 1424, 1429 (10th Cir.1984); Sea Island Broadcasting Corp. v. FCC, 627 F.2d 240, 243 (D.C.Cir.1980). Further, a veteran or a veteran’s survivor, as a matter of statutory right, may have a finally denied claim reopened and reconsidered by the Secretary merely upon the submission of “new and material evidence.” 38 U.S.C. § 5108. And, as the United States Court of Appeals for the Federal Circuit (Federal Circuit) recently made clear, it is easier for a veteran to reopen a finally denied claim because “new and material evidence” is a less restrictive test, one which focuses not upon the ultimate resolution of a claim but upon “the need for a complete and accurate record.” Hodge v. West, 155 F.3d 1356, 1363 (Fed.Cir.1998). The new and material evidence test recognized in Hodge imposes a lower burden to reopen, is most favorable to the veteran, and supports the general rule that any interpretative doubt must be resolved in favor of the veteran. Id. at 1361 n. 1; see also Winters v. West, 12 Vet.App. 203, 209 (1999) (“Hodge stressed that ... new evidence that was not likely to convince the Board to alter its previous decision could be material if that evidence provided ‘a more complete picture of the circumstances surrounding the origin of the veteran’s injury or disability, even where it "will not eventually convince the Board to alter its rating decision.’ ”). There is simply no other situation where an unsuccessful plaintiff or claimant can have his or her claim revisited under such a standard.
II.
Only veterans, or those whose entitlement is based upon a relationship to a veteran, are entitled to the benefits of title 38. Virtually all of the provisions of title 38 use the word “veterans” and are stated in directive language. See, e.g., 38 U.S.C. § 1110 (“For disability resulting from personal injury suffered or disease contracted in line of duty ... the United States mil pay to any veteran ... ”); § 1121 (“The surviving spouse, child or children, and dependent parent or parent of any veteran who died ... in line of duty ... shall be entitled to receive compensation ... ”); § 1151 (“Where any veteran shall have suffered an injury, or an aggravation of an injury, as a result of hospitalization, medical or surgical treatment, or the pursuit of vocational rehabilitation ... [which] results in additional disability to or the death of such veteran, disability or death compensation ... shall be awarded ...”); § 1310 (“When any veteran dies ... from a service-connected or compensable disability, the Secretary shall pay dependency and indemnity compensation to such veteran’s surviving spouse, children, and parents.”) (Emphasis added).
So stated, these affirmative Congressional mandates to the Secretary necessarily preclude their negatives: the Secretary cannot refuse to pay a benefit to an eligible veteran. Indeed, Chief Justice Marshall discussed — and dismissed — this very point in Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). After noting that Congress had directed the Secretary of War to place on the pension rolls all persons named by him in a report to Congress in 1794, he observed:
If [the Secretary] should refuse to do so, would the wounded veteran be without remedy? Is it to be contended, that where the law, in precise terms, directs the performance of an act, in which an individual is interested, the law is incapable of securing obedience to its mandate? ... Is it to be contended that the heads of departments are not amenable to the laws of their country? Whatever the practice on particular occasions may be, the theory of this principle will certainly never be maintained. No act of the legislature confers so extraordinary a privilege, nor can it derive counte *334 nance from the doctrines of the common law.
Id. Just as the Secretary cannot refuse to provide benefits to entitled veterans, the Secretary cannot award veterans’ benefits to those who are not veterans or who do not qualify due to the absence of a recognized relationship to a veteran. Such an act would be ultra vires. “In the American system, government functionaries are entitled to exercise only such powers as are conferred on them, expressly or impliedly, by positive law.” NormaN J. Singer, Sutherland on Statutory Construction § 65.01 (5th ed.1992); see also Marbury, supra at 174-75 (“Affirmative words are often, in their operation, negative of other objects than those affirmed ... ”); see generally, Brown v. Gardner, 513 U.S. 115, 122, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (courts have no obligation to defer to the Secretary’s regulations where there are inconsistencies between the regulations and statutes).
At the very beginning of title 38, the word “veteran” is defined as follows: “For the purposes of this title ... [t]he term ‘veteran’ means a person who served in the active military, naval, or air service, and who was discharged or released therefrom under conditions other than dishonorable.” 38 U.S.C. § 101(2). Thus, one seeking title 38 benefits must establish two elements, active service and acceptable character of discharge, and must do so by a preponderance of the evidence because, by definition, the more relaxed benefit-of-the-doubt standard afforded solely to a veteran by 38 U.S.C. § 5107(b) can only apply once one has established by the traditional standard of proof that one is a veteran.
Thus, unless a claimant first carries the initial burden of establishing status as a veteran or veteran status for the person upon whose military service the desired benefits are predicated, the laws administered by the Secretary and the resources of the VA are not applicable or available. Designation as a veteran bestows certain procedural advantages and evidentiary benefits which are unavailable to nonveteran claimants.
Thus, as the lower threshold burden of producing a well-grounded claim is available only to veterans, it follows that establishing such veteran status must satisfy the preponderance of the evidence standard common in civil and administrative litigation. In enacting title 38, Congress could not have intended that persons without requisite veteran status would benefit from the statutory presumptions and enactments reserved for veterans. Indeed, and consistent with this nation’s policy reasons for venerating veterans, without predicate veteran status there is no cognizable claim to be made before the Department or this Court under title 38.
Laruan v. West, 11 Vet.App. 80, 84 (1998) (emphasis added).
In the vast, vast, majority of instances, proof of eligibility requires only a simple ministerial act: submission of a DD Form 214. A valid DD Form 214, which is the report of discharge issued to each veteran upon separation from military service, constitutes proof of eligibility by a preponderance of the evidence. Proving eligibility, “veteran” status, is so ministerial that it almost escapes notice in the adjudication process. In those rare cases where a veteran’s status cannot be proven by a DD Form 214 submitted by the veteran or the service department (see 38 U.S.C. § 5106), an individual seeking veterans benefits still must prove eligibility, i.e., qualifying service and character of discharge, by a preponderance of the evidence. See Laruan, supra.
With respect to dependents or those claiming benefits by virtue of their relationship with a veteran, they too must establish eligibility by a preponderance of the evidence and for the same reason: they cannot enjoy the benefits of title 38 unless and until they prove that they are *335 qualified. Qualification as a dependent requires two elements: (1) a qualifying relationship (e.g., spouse; child; dependent parent; etc.) with (2) a veteran. Again, in most cases passing this two-part test by a preponderance of the evidence is a simple exercise. All that is required is the veteran’s DD Form 214 and evidence of the relationship (e.g., a marriage certificate, birth certificate, adoption papers, etc.). Until eligibility is established, however, neither the substantive, the procedural, nor the evidentiary benefits available to veterans, including the relaxation of the standard of proof and the ability to reopen a claim upon the submission of new and material evidence, are available. See Aguilar v. Derwinski, 2 Vet.App. 21 (1991); Laruan, supra.
III.
This case presents the rare instance where an individual whose eligibility for title 38 benefits had already been established forfeited that eligibility through acts of her own. The appellant was awarded dependency and indemnity compensation (DIC) in 1956 as the unremarried widow of Zosimo Trilles, a veteran. From the time she was first interviewed concerning her claim, she was advised of the forfeiture of rights provisions for fraud in connection with VA claims. R. at 71, 160. She has denied continually that she had been married to any man after the death of the veteran. R. at 39, 46, 71, 160.
Over the past forty years, however, different facts have evolved through the gathering of evidence and the admissions of the appellant herself. After the veteran’s death, she not only held herself out as the wife of Santiago Penaflorida from 1943 to 1945, she also was married to Augusto Mancilla Malapitan in 1949. The appellant’s statements denying these relationships served as the predicate for the April 1988 forfeiture by the Compensation and Pension Service (R. at 297-98, 300-01) which was upheld by the 1990 BVA decision. R. at 325. The BVA found that the appellant, a widow, had concealed her entry into a marital relationship with another man after the death of her husband who had died in a Japanese prisoner of war camp. “[A]ppellant, beyond a reasonable doubt, knowingly and deliberately, made and submitted to ... VA false statements concerning her marital relationship ... in obtaining VA benefits to which she had no legal entitlement.” R. at 324-25. Based upon this finding of fraud and pursuant to section § 6103, the Board held that the appellant had “forfeited all rights, claims and benefits under all laws administered by ... VA (except laws pertaining to insurance benefits).” Id. The Board also explicitly found no reason to revoke the forfeiture. Id. When the appellant subsequently sought to have the forfeiture revoked, the BVA, in the November 14,1996, decision presently before the Court, employed a 38 U.S.C. § 5108 “new and material evidence” analysis and, finding that the appellant had failed to submit such new and material evidence, refused to “reopen” her claim for revocation of the forfeiture.
The Board acted properly in refusing to revoke the forfeiture but it erred in applying the section 5108 “new and material evidence” analysis to a forfeiture by the Secretary pursuant to section 38 U.S.C. § 6103(a). Section 6103(a) provides as follows:
Whoever knowingly makes or causes to be made or conspires, combines, aids, or assists in, agrees to, arranges for, or in any way procures the making or presentation of a false or fraudulent affidavit, declaration, certificate, statement, voucher, or paper, concerning any claim for benefits under any of the laws administered by the Secretary (except laws pertaining to insurance benefits) shall forfeit all rights, claims, and benefits under all laws administered by the Secretary (except laws pertaining to insurance benefits).
“As in any case of statutory construction, our analysis begins with ‘the language of *336 the statute.’ ” Hughes Aircraft v. Jacobson, 525 U.S. 432, 119 S.Ct. 755, 760, 142 L.Ed.2d 881 (1999); see also Glover v. West, 185 F.3d 1328, 1332 (Fed.Cir.1999) (“In construing a statute or regulation, we commence by inspecting its language to ascertain its plain meaning.”) Because the language is clear, because the language is unambiguous, our analysis must end there as well. Id.; see also Connecticut Nat. Bank v. Germain, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). There is no room for interpretation. See Selley v. Brown, 6 Vet.App. 196, 198 (1994) (where statute is clear, no interpretation is required). This Court and VA “must give effect to the unambiguously expressed intent of Congress.” Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778; see also Glover, 185 F.3d at 1332 ( court recognized that it must give full effect to all words chosen by Congress and contained in the statute); but cf. Steadman v. SEC, 450 U.S. 91, 101, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981) (where language of statute was “somewhat opaque,” Court looked to legislative history to reveal Congress’ intent).
In section 6103(a), Congress spoke directly on the precise question of what a forfeiture means: “all rights, claims, and benefits under all laws administered by the Secretary” are forfeited. (Emphasis added.) By its terms, the statute permits one and only one exception to the emphatic “all ... all” proscription: a parenthetical set concretely within the statute itself excepts only “laws pertaining to insurance benefits.” 38 U.S.C. § 6103(a). That single exception has no bearing upon the matter before us but it does manifest a deliberate choice by Congress to permit only one exception.
Because the statute contains no other exception or qualification, the phrase “all rights, claims, and benefits under all laws administered by the Secretary” necessarily includes “all” title 38 procedural, evidentia-ry, and substantive rights and benefits afforded to veterans and those eligible family members. Therefore, when an eligible veteran, or an individual eligible by virtue of a relationship with a veteran, forfeits that title 38 eligibility, he or she in fact and in law loses much. Forfeiture results in the loss of the right to have a finally denied claim reopened upon a lower quantum of “new and material evidence” under § 5108; indeed, since § 6103(a) mandates the forfeiture of “all claims,” there is no longer an extant claim which could be reopened if, contrary to the clear language of § 6103(a), the benefits of § 5108 remained available after forfeiture. A forfeiture also means the loss of the right to assistance under the Secretary’s statutory duty to assist under 38 U.S.C. § 5107(a). See La-man, supra. In addition, forfeiture of “all ... benefits under all laws administered by the Secretary” means the loss of the enjoyment of the § 5107(b) benefit of the doubt or equipoise standard or proof. Thus, having forfeited the right to the benefit of the doubt standard, one seeking to have a forfeiture revoked would have to shoulder the burden of refuting the factual predicate for the Secretary’s original forfeiture decision by a preponderance of the evidence.
In Villaruz v. Brown, 7 Vet.App. 561 (1995), where a veteran had forfeited “all rights, claims and benefits” pursuant to 38 U.S.C. § 6103 and sought revocation of the forfeiture pursuant to 38 U.S.C. § 6104, the Court followed without comment the “new and material evidence” reopened claim route of 38 U.S.C. § 5108. However, in Tulhigan v. Brown, 9 Vet.App. 484, 487 (1996), the Court held that “where a veteran has lost his status as a benefits-eligible claimant, he must establish it anew by a preponderance of the evidence.” Interestingly, and incorrectly, the authority for this statement was given as Villaruz. Id. I was a member of the panel which issued Villamz as well as the Tulingan panel and thus must plead guilty to the charge of aiding and abetting imprecision.
Upon the reflection generated by this appeal, I have concluded that the Chief Judge was correct and more precise in *337 Tulingan: the reopening provisions of 38 U.S.C. § 5108 have no place in the consideration of a request to revoke a forfeiture under § 6103. To the extent that Villaruz holds otherwise, it must be reversed (this is the only point in the majority opinion with which I can agree although our reasons differ substantially).
IV.
Properly framed, the issue presented to the Board was not whether the appellant’s claim should be reopened under 38 U.S.C. § 5108 but whether her forfeiture should be revoked. The standard which the Board should have applied was not whether the appellant had submitted new and material evidence to warrant reopening under 38 U.S.C. § 5108 but whether the appellant had submitted evidence of sufficient weight to negate the factual basis for the forfeiture decision and thus gain revocation of that forfeiture.
In seeking revocation of her forfeiture, the appellant has argued that (1) she was forced to marry Mr. Malapitan (R. at 245, 280, 324) and (2) she was never married to Mr. Malapitan on February 26, 1949 and any documents certifying that such a marriage took place were fabricated. R. at 310, 327, 342. 310. She has submitted additional evidence since the 1990 forfeiture in support of her contentions. In its November 14, 1996, decision, the Board determined that this evidence included: (1) the appellant’s own written contentions which were duplicative of her assertions before the Board in 1990; (2) a September 1987 statement indicating that a staff member at the office of the civil registry searched the files of the Irosin, Sorsogon civil registry and was unable to find a record of the death of Mr. Malapitan; and (3) a March 1989 statement from the office of the civil registry indicating that the Chief of the Certification Section was unable to find a record showing the marriage of the appellant and Mr. Malapitan.
Although the Board erred in applying the claim-reopening provisions of § 5108 to this § 6103(a) forfeiture, that error was not prejudicial to the appellant (see 38 U.S.C. § 7261(b)) because the Board essentially determined that the appellant had failed to contradict the factual predicate upon which her original forfeiture was based by a preponderance of the evidence. See Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 117 S.Ct. 1953, 1963 n. 9, 138 L.Ed.2d 327 (1997) (“[T]he preponderance standard goes to how convincing the evidence in favor of a fact must be in comparison with the evidence against it before that fact may be found.”). Specifically, the Board stated:
Additional evidence submitted since the May 1990 Board decision either duplicates evidence previously considered or is not probative of the claim .... Since the May 1990 Board decision, the appellant has submitted evidence consisting mostly of her own written contentions [which] duplicate her assertions which were considered by the Board in 1990.... In addition to her written contentions, the appellant has submitted a statement, not previously of record, dated in September 1987, which ... indicates that a staff member of the office of the civil registry searched the files of the Irosin, Sorsog[o]n Civil Registry and was unable to find a record of the death of the appellant’s second husband. She also submitted a statement, not previously of record, dated in March 1989, which ... indicates that the Chief of the Certification Section was unable to find a record showing the marriage of the appellant and her second husband. As these statements were not of record when the Board made its 1990 decision, they are new evidence. However, they cannot be considered material since they do not show that the marriage and the death did not take place, merely that the records could not be located at a later date. As the claims file before the Board in 1990, and today, contains both the marriage certificate and the death certificate in issue, the subsequent loss *338 of such certificates from official records depositories has no probative value on the matter of whether the events reported in the certificates actually occurred. The newly-submitted, statements do not tend to show that the appellant had not previously attempted to conceal her second marriage from the VA; they merely show deficiencies in record-keeping. Thus they are not material for the purposes of reopening the previously-denied claim.
R. at 5-6. (Emphasis added.)
The evidence of record, including the evidence submitted since the 1990 BVA decision, fails to prove by a preponderance that the basis of the forfeiture decision was incorrect. The appellant has failed to meet her burden of submitting preponderating evidence to warrant revocation of the forfeiture. Therefore, I would affirm the BVA’s § 7104(d) order denying benefits.
V.
The majority opinion goes astray at the very beginning. After paying lip service to the controlling rule that “where a statute has plain meaning, a Court shall give effect to that meaning.” (op. at 320-21; citations omitted), it goes on to hold that “[t]he language of section 6103 plainly states that a person who commits fraud in connection with his or her claim or aware of benefits, loses all rights, claims, and benefits.” Id. That should be the end of the issue and for me it is; sadly, for the majority, it is not the end but the beginning of an aimless and unwarranted venture through regulations, legislative history, and result-oriented conclusions proffered without reason or rationale. Using only the word “however” as justification, the majority runs the “plain meaning” red light and proceeds to proclaim that there are two “omissions” in the statute. It then uses these “omissions” as licenses to find both ambiguity and absurdity. The first “omission,” in the majority’s view, is that § 6103(a) is “completely silent on the forfeiture process.” Id.; op. at 321. Why this “omission” is of moment we are not told, but it need only be noted that the statute is completely silent on any number of irrelevancies and for the simple reason that they are just that: irrelevant. The Secretary’s decision-making processes are well set out elsewhere and need not be repeated each and every time Congress enacts new legislation affecting benefits. The second “omission” relied upon by the majority is that the statute is “silent on ... whether Congress intended that a section 6103 bar would forfeit procedural rights.” Id. With regard to this “omission,” the majority is factually and simply wrong because the statute is not silent in that regard. Congress used the word “all,” as in “shall forfeit all rights, claims, and benefits under all laws administered by the Secretary.” One can only wonder what part of the word “all” the majority does not comprehend. In turning a blind eye to the patent clarity of the statute and using concocted silence to find ambiguity and absurdity, the majority callously disregards the Supreme Court’s clear guidance in Gardner that “congressional silence ‘lacks persuasive significance.’ ” 513 U.S. at 121, 115 S.Ct. 552.
In its rash rush to overturn this Court’s decisions in Villeza v. Brown, 9 Vet.App. 353 (1996), and Tulingan, the majority holds that those decisions did not give proper deference to regulations promulgated by the Secretary. Yet, as a simple reading will confirm, in none — not one — of the regulations cited by the majority has the Secretary promulgated rules allowing for the reopening of final forfeitures. See 38 C.F.R. §§ 3.104, 3.105, 3.905(d), 20.1103, 20.1104. Thus, the majority requires post hoc deference to regulations which do not even deal with the issue before the Court in those cases. Of even more import, in its thrashing about for some at least colorable authority for its conclusion that the procedural benefits of 38 U.S.C. § 5108 are not forfeited under § 6103, the majority trumpets the historical fact that these irrele *339 vant regulations have remained unchanged since the 1960’s when they were first promulgated. So what? When that argument was made in Gardner, the Supreme Court summarily rejected it: “A regulation’s age is no antidote to clear inconsistency with a statute, and the fact, again, that [the VA regulation] flies against the plain language of the statutory text exempts courts from any obligation to defer to it.” 513 U.S. at 122, 115 S.Ct. 552. In sum, the majority’s regulatory analysis suffers from the same defects as its statutory analysis in that it is simply irrelevant and ignores settled Supreme Court precedent and canons of statutory construction.
Finally, and contrary to the suggestion of the majority, there indeed are procedures available for “revisiting” an initial forfeiture decision. The forfeitee can seek appellate review by the Board pursuant to 38 U.S.C. § 7104(a) and then, if he or she chooses, by this Court by filing a Notice of Appeal. See 38 U.S.C. § 7252. Moreover, although the majority again suggests otherwise, even without the benefit of the liberal reopening provisions of 38 U.S.C. § 5108, a forfeitee is not without remedy. He or she can seek to have lost title 38 benefits, rights, and claims restored by having the forfeiture revoked but, because of the loss of status as a benefits-eligible claimant by virtue of the forfeiture, status as a benefits-eligible claimant would have to be established by a preponderance of the evidence. See Laruan, supra. Through the RO, the Secretary would still be authorized and required to adjudicate the threshold issue of status to first ensure that the Secretary has the authority to adjudicate the merits. 38 U.S.C. § 511(a) (“The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provisions of benefits by the Secretary to veterans or the dependents or survivors of veterans.”); cf. Barnett v. Brown, 83 F.3d 1380, 1383 (Fed.Cir.1996) (“[I]t is well-established judicial doctrine that any statutory tribunal must ensure that it has jurisdiction over each case before adjudicating the merits, that a potential jurisdictional defect may be raised by the court or tribunal, sua sponte or by any party at any stage in the proceedings, and, once apparent, must be adjudicated.”); Phillips v. Brown, 10 Vet.App. 25, 30 (1997) (“[I]t is ... well established that a court has jurisdiction to determine whether it has jurisdiction over a particular matter.”) (citing Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). If the forfeitee fails to meet the burden of submitting preponderating evidence to show that the factual basis for the forfeiture decision was wrong, the RO will decide not to revoke the forfeiture; that decision may be appealed to the BVA (38 U.S.C. § 7104(a)) and then to this Court. 38 U.S.C. § 7252. Of course, if there is no evidence submitted, then administrative res judicata would apply. See Astoria Federal Savings & Loan Ass’n v. Solimino, 501 U.S. 104, 107, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) (citing United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), the Court stated, “[W]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an opportunity to litigate, the Courts have not hesitated to apply res judicata to enforce repose.”); Routen v. West, 142 F.3d 1434 (Fed.Cir.1998) (basic principles of finality and res judicata apply to agency decisions denying a veteran’s claim for disability benefits). On the other hand, if the RO decides that status was established (or re-established) by a preponderance of the evidence, then, and only then, can the RO look to the merits and determine whether benefits should be restored or awarded.
In its opinion, the majority concedes that the language of § 6103 is “plainly” stated, but it characterizes the result compelled by that language as “absurd” when it is not. The majority’s tortured effort to escape that mandate rests on the incorrect predicate of the absurdity they conjure. For reasons neither explained nor explain *340 able, the majority has chosen to ignore well-settled legal principles in order to give away rights and benefits to which only veterans are entitled, including the right to reopen a finally-denied claim under 38 U.S.C. § 5108, to one who has forfeited her entitlement to such veterans’ rights and benefits. I dissent.