**William M. McGINTY, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–522.**

United States Court of Veterans Appeals.

March 26, 1993.

William M. McGinty, pro se.

James A. Endicott, Jr., Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Arthur L. Kraut, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and IVERS, Associate Judges.

IVERS, Associate Judge:

William M. McGinty appeals from a December 3, 1990, Board of Veterans' Appeals (BVA or Board) decision which denied his claim for service connection for asbestosis. The Secretary of Veterans Affairs (Secretary) has filed a motion for summary affirmance of the BVA decision. The Court has jurisdiction of the case under 38 U.S.C.A. § 7252(a) (West 1991). The Court holds that the Board did not provide adequate "reasons or bases" for its decision in the case to permit effective judicial review of the matter. Accordingly, we vacate the decision of the BVA and remand the case for readjudication consistent with this opinion.

## FACTS

The veteran served in the United States Navy as a seaman from January 1952 to November 1955. R. at 1–2, 98. In May 1982, he was diagnosed with "asbestosis lung disease." R. at 64, 77. Asbestosis is "a pneumoconiosis due to asbestos particles"; pneumoconiosis is "a disease of the lungs caused by the habitual inhalation of irritant mineral or metallic particles." WEBSTER'S MEDICAL DESK DICTIONARY 51, 557 (1986).

In November 1987, the veteran filed a claim for service connection for asbestosis. R. at 78–81. In reply to his claim, the veteran received a letter from the Veterans' Administration (now Department of Veterans Affairs) (VA) asking that he provide information about his asbestos exposure during active duty, including "full organizational designation at the time the exposure occurred ..." and "your duty assignments while on active duty." R. at 95. In reply, the veteran stated that he served on the *U.S.S. Franklin D. Roosevelt* in the gunnery department from 1952 to 1954 and on the *U.S.S. Coral Sea* in the gunnery department from 1954 to 1955. R. at 91. Specifically, he noted that he served as a "hot-caseman" whose job it was "to catch the spent casings as they were kicked out of the breech after the round was fired.... When [the casings] kicked out spent they were still afire and asbestos gloves were the necessary tools for the job." *Id.* In addition, the veteran reported,

The gloves had to be in my possession at all times while we were in the gun mount. When at sea we often stayed in the gun mount for extended periods of time. Often 24 hours a clip. We stood gun watches like 12 on/12 off, 12 on/24 off, 24 on/12 off, and 24 on/24 off. This, in addition to numerous general quarters drills over a period of four years amounts to a cumulative high count of asbestos fibre [sic] exposure. Asbestos gloves shed a great deal. You very soon feel the lint on your fase [sic], up your nose, in your eyes. There is no padding in a gun mount and it was not unusual for me to use my gloves as a pillow and a head rest when we were at ease.

*Id.* Finally, the veteran described his duties in post-service employment, including his work as a shipfitter from 1956 to 1959 for Bethlehem/Sparrows Point Shipyard and as part of the train crew from 1960 to 1970 on the Patapsco and Back River Railroad, whose function it was "to service Bethlehem Steel Co. and all companys [sic] on Bethlehem Steel property in the steel business." R. at 92.

On June 15, 1989, a VA regional office (RO) rating board denied the veteran's claim for service connection for asbestosis, noting the veteran's description of his duties as a "hot caseman" in service but also noting that "[s]ervice personnel records ... failed to show the veteran's duties...." R. at 98. The rating board concluded,

Veteran's direct exposure to asbestos during service has not been specifically

documented[;] however, veteran has indicated that he was employed with the Bethlehem Steel Corporation and subsequently with the [r]ailroad operating at the shipyard for several years after service. Veteran's claim for service connection of asbestosis is being denied based on his intercurrent exposure to asbestos for many years after service.

R. at 99.

The veteran filed a Notice of Disagreement with the rating decision in July 1989, and the VA sent him a Statement of the Case (SOC) the following month. R. at 100–04. Under "Reasons for Decision" on the SOC, the VA noted, "Although asbestos exposure during service has not been positively verified, the veteran's claims regarding exposure will not be challenged. Service connection has been denied, however, based on the veteran's post-service employment in an occupation recognized for high levels of exposure to asbestos." R. at 104.

In September 1989, the veteran filed a VA Form 1–9 substantive appeal to the BVA with which he submitted additional evidence, including a certificate from Dr. Patrick J. Dougherty dated in 1971, showing that the veteran suffered an "allergic reaction with bronchospasm," and an excerpt from an article written by Dr. Irving J. Selikoff, Director, Environmental Science Laboratory, Mount Sinai School of Medicine, City University of New York. R. at 105, 108–09. With regard to this evidence, the veteran stated,

I take issue with the statement ... that my [railroad] time from 1960 to 1970 subsequently added to my exposure time. The [railroad] job was an open-air job and I was at no more risk than any other employee or resident of Sparrows Point, [Maryland]. Certainly not everyone who "functions in and around Bethlehem Steel Property" develops asbestos lung disease....

Further, I contend that Dr. Dougherty's certificate indicating "broncospasm" [sic] shows some lung distress as early as 1971 and [Dr.] Irving J. Selikoff's statement: "Tissues and cells begin to react

to the presence of inhaled asbestos fibers on a microscopic level within hours and days ..." which, in my case, being 1952, equates to a latency period of 19 years which is more the norm between infection and symptom than would be the 15 years had I been infected at Bethlehem Steel. Again, according to [Dr.] Selikoff's report: "Of 1,117 victims, more than half of those with less than twenty years from onset of exposure still had normal x-rays."

R. at 105–10.

On October 24, 1989, the veteran, accompanied by a representative from the Maryland Veterans Commission, testified at an RO hearing, contesting the RO rating board's denial of service connection based on the principle of intercurrent cause and asserting that the veteran's initial exposure to asbestos in the Navy was the primary cause of his disability. R. at 111. Specifically, the veteran's representative, arguing the relevance of Dr. Selikoff's report to the veteran's case, stated,

The point is that the 20–year latency period would date the exposure to be in the early [fifties] as opposed to the late [fifties]; more likely the naval service as opposed to the shipyard work. We would also like to point out the doctrine of reasonable doubt. With asbestos exposure in both the Navy and perhaps in the shipyard, to a lesser degree, we do not think it is medically possible to determine the degree of harm done by the exposure in the Navy vs. the degree of harm done by the exposure in the shipyard. And since the reasonable doubt doctrine requires that reasonable doubt shall be granted in favor of the veteran, we see clearly here a meritorious case for a grant of service connection for the lung condition as a result of the exposure to the asbestos in the Navy.

R. at 119.

The hearing transcript also shows that, upon diagnosis of asbestosis in 1982, the veteran filed a claim for workmen's compensation. R. at 117. On September 26, 1990, another hearing was held before the BVA in Washington, D.C., where the veter-

an, again accompanied by his representative, testified as follows with regard to the workmen's compensation claim:

Q. Now you got a workmen's compensation settlement—I assume for your lung condition and as I understand it they settled on your post[-]service exposure as being the cause simply because they did not know of any other explanation for it. Is that correct? They did not pick and choose? They did not say, well you were in the Navy, but you really got it here? They just said, you work here and therefore you must have gotten it here. Is that the way they arrived at that conclusion?

A. ... You mean the doctors, the city hospital or whatever?

Q. Whoever decided you were entitled to workmen's compensation. What was the basis for that conclusion?

A. The only place in the world that this could ever happen was shipyard, period. There was no other consideration.

Q. They did not explore your history or they did not say tell us what you have been doing.

A. No, they did not say, did you possibly work in the Navy and work with— nothing like that.

[Veteran's representative]: I suspect because they are in the area of Baltimore, with steel history there, they have gone through a lot of litigation for asbestos claims and they have just adopted a procedure—Oh, another one of those guys. Let's just grant it and get it over with.

R. at 126, 137–38. The veteran continued to emphasize his belief that his exposure to asbestos was greater in the Navy than it was during his post-service employment:

Q. But you did not volunteer to the doctor that you were also in the Navy?

A. No. I had not put that together at all. I was completely done with—I just did not relate that to the Navy. It just did not occur to me that I handled asbestos in the Navy until sometime later when someone brought it to my attention, somebody I had worked with in the Navy and told me, how about them [sic] gloves and then this whole thing come to me. I said ye[a]h, how about that, four years of that stuff. I never realized it.

Q. So you were not working with any materials to your knowledge that were made of asbestos in the shipyard?

A. I did not handle them. No, I never handled them. The only thing I handled was a—well, the only tools on the ship are a mole and tacking clamp, wedges, jacks, we did not put in any kind of insulation or do anything, we did not handle anything like that.

. . . .

Q. So the only reason for anyone to believe that you were exposed to asbestos after the service was assumption. People assumed that you were in that line of work or in that area and therefore must have gotten it from there?

A. Ye[a]h, well there was no other way to go. They had to say that. I mean, if I had it in my lungs, it had to come from there because I did not mention it to the Navy, you know or anything like that.

R. at 132–33.

The DISCUSSION AND EVALUATION section of the Board's decision denying the veteran's claim for service connection for asbestosis states, in its entirety, as follows:

The service records show that the veteran's military occupational specialty was seaman. The occupational specialty and job description provided by the veteran concerning his service work does not indicate that he was in fact exposed to asbestos to any significant degree. Subsequent to service, he did engage in occupations where he could have been exposed to significant asbestos. The evidence is thus insufficient to establish that the claimed asbestos exposure in service was the cause of the asbestosis first diagnosed in 1982.

We have reviewed the record carefully, but do not find that the evidence is so evenly balanced as to raise a reasonable doubt.

*William M. McGinty*, BVA 90–41078, at 3 (Dec. 3, 1990). The veteran submitted a timely appeal to this Court.

## ANALYSIS

A determination of service connection requires a finding of the existence of a current disability and a determination of a relationship between that disability and an injury or disease incurred in service. *See* 38 U.S.C.A. § 1131 (West 1991); 38 C.F.R. § 3.303 (1992); *Rabideau v. Derwinski*, 2 Vet.App. 141, 143 (1992). That the veteran currently suffers from asbestosis is not in dispute in this case. Rather the issues presented by the case are as follows: (1) whether the veteran was exposed to asbestos in service; (2) whether he was exposed to asbestos in post-service employment; and, if he was exposed to asbestos both in service and after service, (3) what effect, if any, does his post-service exposure to asbestos have on his claim for service connection for asbestosis?

The Court observes that there currently is no specific statutory guidance with regard to claims for service connection for asbestosis and other asbestos-related diseases, nor has the Secretary promulgated any regulations. However, although the Board did not mention it in its decision, the VA has issued a circular on asbestos-related diseases which provides some guidelines for considering compensation claims based on exposure to asbestos. DEPARTMENT OF VETERANS BENEFITS, VETERANS' ADMINISTRATION, DVB CIRCULAR 21–88–8, ASBESTOS-RELATED DISEASES (May 11, 1988) [hereinafter "DVB CIRCULAR"]; *see* Ennis v. Principi, *4 Vet.App. 50, 54 (1993).*

▮ With regard to the issues in the case, the BVA concluded, without providing any reasons or bases for its conclusory remarks, that the "job description provided by the veteran concerning his service work does not indicate that he was in fact exposed to asbestos *to any significant degree,*" that "he *could* have been exposed to *significant asbestos*" in his post-service employment, and that therefore the evidence is "insufficient to establish that the claimed asbestos exposure in service was the cause of the asbestosis" that currently afflicts the veteran. *McGinty*, BVA 90–41078, at 3 (emphasis added). However, according to the sworn testimony of the

veteran that is transcribed in the record, the job description he provided to the VA was that of a "hot caseman" who wore asbestos gloves in order to perform his job. The Board has not provided any reasons or bases for its conclusion that this exposure was not "significant" exposure as it is required to do (38 U.S.C.A. § 7104(d)(1) (West 1991); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1990)), nor has it provided any standard for the level of exposure needed to constitute "significant" exposure. The DVB CIRCULAR notes that "the exposure to asbestos may be brief (as little as a month or two) or indirect (bystander disease)." DVB CIRCULAR at 2. Furthermore, the Court observes that, because the determination of the cause of a disease is a medical matter, the veteran's testimony as to the cause of his disease is not competent evidence of causation. *See Espiritu v. Derwinski*, 2 Vet.App. 492, 494 (1992). However, the veteran is competent to testify as to the facts of his asbestos exposure, i.e., wearing asbestos gloves while performing his duties as a "hot caseman" in the Navy. Therefore, if the Board had reasons to doubt the credibility of the sworn testimony of the veteran regarding his duties as a "hot caseman" or his exposure to asbestos by wearing asbestos gloves while performing those duties, it should have stated those reasons in assessing the credibility of the veteran's testimony or it should have remanded the case for further factual development in an attempt to ascertain the claimant's precise duties and whether those duties required the use of asbestos gloves. *See Hatlestad v. Derwinski*, 1 Vet.App. 164, 170 (1991) (BVA should provide reasons or bases for its findings or conclusions regarding the credibility of appellant's personal, sworn testimony as evidence).

The Board also concluded that the veteran "could have been" exposed to "significant" asbestos in his post-service occupations. We note an absence of evidence of post-service asbestos exposure. Once again, the Board did not articulate how much exposure is "significant" or what level of exposure is needed in order to grant service connection, nor did it articulate reasons or bases for its conclusion that the

veteran "could have been" exposed to asbestos during his post-service employment. However, although the BVA did not cite to it, the DVB CIRCULAR includes "work in shipyards" as one "of the major occupations involving exposure to asbestos." *Id.* at 2. In addition, the Circular provides,

> High exposure to respirable asbestos and a high prevalence of disease have been noted in insulation and shipyard workers. This is significant considering that, during World War II, several million people employed in U.S. shipyards and U.S. Navy veterans were exposed to chrysotile products as well as amosite and crocidolite since these varieties of African asbestos were used extensively in military ship construction.

*Id.* The veteran testified that his workmen's compensation settlement was based on an "assumption" that his asbestosis resulted from his work in the shipyard, an assumption made in part, according to the veteran, because "there was no other way to go," given that the veteran failed to advise examiners during the workmen's compensation proceedings that he had served in the Navy (R. at 132–33), and made in part, according to the veteran's representative, because asbestos-related diseases are common among former shipyard workers. R. at 138. However, the Board does not comment on this evidence or offer any reasons or bases for its conclusion that the evidence of record is "insufficient to establish that the claimed exposure in service was the cause of the asbestosis first diagnosed in 1982." *McGinty*, BVA 90–41078, at 3.

Furthermore, the Board did not address the issue of what effect, if any, the veteran's possible post-service exposure to asbestos has on his claim for service connection. For example, the Board did not address the evidence that the veteran submitted, i.e., Dr. Selikoff's article, to support the veteran's assertion that the latency period between asbestos exposure and the onset of symptoms of asbestos-related disorders is twenty years, a period which the veteran cited in support of his contention that his exposure to asbestos was more likely to have occurred in service than during his post-service employment. R. at 105–10. In this regard, however, the Court notes that the DVB CIRCULAR states that "the latent period varies from [ten] to [forty-five] or more years between first exposure and development of disease." DVB CIRCULAR at 2. Moreover, the Board did not comment on what effect, if any, the veteran's having received a workmen's compensation settlement for asbestosis has on his claim that his asbestosis was incurred in service.

The Board's conclusory statements are "neither helpful to the veteran, nor 'clear enough to permit effective judicial review,' nor in compliance with statutory requirements." *Gilbert*, 1 Vet.App. at 57 (quoting *International Longshoremen's Ass'n v. National Mediation Bd.*, 870 F.2d 733, 735 (D.C.Cir.1989). It is not possible for the Court to affirm such bare conclusory statements, especially in a case such as this where the need for compliance with the "reasons or bases" requirement was heightened by the absence of statutory or regulatory guidance regarding compensation claims for asbestos-related diseases. Accordingly, the Court holds that the Board has not provided adequate "reasons or bases" for effective judicial review of this matter and therefore the BVA decision must be vacated and the case remanded to the BVA for readjudication. Finally, the Court notes that "[a] remand ... is [not] merely for the purposes of rewriting the opinion so that it will superficially comply with the 'reasons or bases' requirement of [38 U.S.C.A. § 7104(d)(1) but rather] is meant to entail a critical examination of the justification for the decision." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991).

## CONCLUSION

For the reasons stated above, the December 3, 1990, decision of the BVA is VACATED and the case REMANDED for readjudication consistent with this opinion.