Sammie G. NOLEN, Appellant,

v.

Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.

No. 96–1756.

United States Court of Appeals for Veterans Claims.

April 28, 1999.

Frank B. Angarola was on the brief for the appellant.

Michael P. Horan and Karen B. Levin were on the reply brief for the appellant.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; Joan E. Moriarty, Deputy Assistant General Counsel; and Amy S. Gordon were on the brief for the appellee.

Before KRAMER, FARLEY, and GREENE, Judges.

FARLEY, Judge:

The veteran, Sammie G. Nolen, appeals a November 20, 1996, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for asbestosis. Record (R.) at 4. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the decision of the BVA.

## I. RELEVANT BACKGROUND

The veteran served in the U.S. Marine Corps from September 1943 to February 1946, including combat in the Pacific Theater of Guam and Okinawa. R. at 22, 24. Regarding his lungs, the veteran's service medical records (SMRs) report acute bronchitis in February 1945. R. at 34. There are no references to asbestos exposure in any service records.

In a November 1991 chest x-ray, Dr. Robert G. Fraser found evidence of pleural disease related to asbestos exposure. R. at 96. That same month, Dr. A. David Russakoff described the veteran as a "66 year old male with a history of asbestos exposure" and found pleural plaques on the veteran's lungs which were consistent with the pleural disease related to asbestos exposure. R. at 97. He did not state the source of the exposure. In an August 1992 letter to VA, Dr. Joseph E. Welden, Jr., the veteran's internist, stated "I think it is important to realize that this patient was exposed to asbestos and does have some pleural plaques on his chest x-ray

as well as suffering from chronic obstructive pulmonary disease." R. at 104. He did not state the source of the asbestos exposure.

At an April 1993 hearing regarding claims for service connection for bronchitis and an increased rating for malaria, asbestos was discussed in passing in the following exchange:

Q. Are you under treatment for asbestosis or asbestos now? Are you being treated for that specifically?

A. I don't think there's anything you can do for it at this stage, sir.

Q. So, that's just part of the lung problems you have overall, is that correct?

A. Yes, sir.

Q. Which you feel started back in mustard gas exposure and yellow powder exposure on Guam?

A. Yes, sir.

R. at 122–23.

In a May 1993 statement, Dr. Frank Mazza reported a history related by the veteran of working as a carpenter for U.S. Steel from 1946 to 1984. R. at 130. "Over that 38 years he had multiple jobs that included sawing raw asbestos material which then aerosolized. He also made gaskets that required sawing and punching of holes in them." *Id.* "He certainly appears to have evidence of asbestos related pleural disease based upon his history and chest roentgenographic findings." R. at 131. The report is silent as to any history of exposure in service.

The appellant submitted a July 1994 independent medical examination conducted by Dr. Scott G. Donaldson, a private physician. During the examination, the veteran informed Dr. Donaldson that he was a machine gunner in the Pacific while in the Marines from 1943 to 1946. He also indicated that upon retirement from the service, he went to work for U.S. Steel as a carpenter where "he worked extensively with asbestos sawing, pipecovering, gaskets and asbestos bricks." R. at 127. The report is silent about any reported exposure in service. Dr. Donaldson diagnosed the veteran with, *inter alia,* bilateral pleural thickening along both lateral hemithoraces consistent with prior asbestos exposure. R. at 129.

In October 1994, the veteran filed a claim for service connection and alleged that he was exposed to asbestos in service, specifically, while being transported as a Marine on Navy ships. R. at 125. VA requested additional information regarding any alleged exposure. R. at 139. He responded that, after discharge, he worked for U.S. Steel, and that his "jobs did not involve or require the handling of insulation or asbestos, however, [he] did come in contact with it on a few occasions." R. at 141. He also indicated that he had ceased smoking in 1985. *Id.*

The regional office (RO) denied the claim. R. at 143. The RO reviewed the evidence of record including the reports from Drs. Mazza and Donaldson and explained that there was "no conclusive evidence showing the veteran was exposed to asbestos products during his period of military service. The evidence does show that the veteran was employed after his discharge from military service in occupations which exposed him to asbestos products." R. at 144. The veteran filed a Notice of Disagreement on March 14, 1995. R. at 147. A Statement of the Case was issued. R. at 152–55. On his VA Form 9, Appeal to the Board of Veterans Appeals (Form 9), the veteran asserted that he was exposed to asbestos "while aboard naval vess[els] enroute to various locations during WWII" and while he was a machine gunner using "asbestos ammo belts to carry the weapons when they became too hot from use." R. at 157. He further stated that "[a]fter service, [he] did come in contact with asbestos on very few occasions" and that "[he] never told Dr. Donaldson that [he] had worked with asbestos extensively." *Id.* The veteran then indicated his belief that it was "a well known fact that asbestos was extensively used in the con[s]truction of naval vess[els] during this period. One does not need to work with this product to contract asbestosis, they only need to breath[e] the fibers of broken or torn asbestos products." *Id.*

The BVA found the claim well grounded and proceeded to deny it on the merits. In its decision, the Board referenced DEPARTMENT OF VETERANS BENEFITS, VETERANS' ADMINISTRATION, DVB CIRCULAR 21–88–8, AS-

BESTOS-RELATED DISEASES (May 11, 1988) [hereinafter DVB Circular] (presently VA ADJUDICATION PROCEDURE MANUAL, M21–1, Part VI, ¶ 7.21 (Aug. 26, 1996)). It noted that all of the medical reports related his exposure to post-service employment and that the veteran's claim of in-service exposure did not surface until he filed a claim for service connection. It stated that his transit as a passenger on a Navy ship in no way came close to the activities of shipyard workers or Navy veterans who worked in boiler rooms and gun turrets where there was a large amount of asbestos insulation. It also dismissed the exposure-by-ammo-belt claim stating: "The veteran's assertions of asbestos exposure as a machine gunner lack credibility as the source of his asbestos exposure when viewed in light of his extensive post-service asbestos exposure." R. at 11. This appeal followed.

## II. ANALYSIS

### A. Well–Grounded Claim

 Section 5107(a) of title 38, U.S.Code, provides in pertinent part: "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." The determination of whether a claim is well grounded is a matter of law which this Court reviews de novo. *Grivois v. Brown*, 6 Vet. App. 136, 139 (1994). A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [§ 5107(a) ]." *Murphy v. Derwinski*, 1 Vet. App. 78, 81 (1990). "The quality and quantity of the evidence required to meet this statutory burden of necessity will depend upon the issue presented by the claim." *Grottveit v. Brown*, 5 Vet.App. 91, 92–93 (1993). Where the determinative issue involves medical causation or a medical diagnosis, competent medical evidence to the effect that the claim is "plausible" is generally required. *Id.* at 93. In *Caluza v. Brown*, the Court held that for such a claim to be well grounded, there generally must be (1) a medical diagnosis of a current disability; (2) medical or, in certain circumstances, lay evidence of incurrence or aggravation of a disease or injury in service; and (3) medical evidence of a nexus between an in-service injury or disease and the current disability. 7 Vet.App. 498, 506 (1995), *aff'd*, 78 F.3d 604, 1996 WL 56489 (Fed.Cir.1996) (table); *see also Epps v. Brown*, 9 Vet.App. 341 (1996), *aff'd sub nom. Epps v. Gober*, 126 F.3d 1464 (Fed.Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998).

 In addition, section 1154(b) of title 38, U.S.Code, allows combat veterans to use lay testimony as acceptable proof of "[in-]service incurrence or aggravation of [an] injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service." While this provision allows a veteran's testimony to be used to satisfy the first *Caluza* element—evidence of an in-service incurrence or aggravation of a disease or injury—it does not affect the general requirement that the second and third *Caluza* elements—present disability and a nexus to service—be supported with evidence from a medical professional. *See Arms v. West*, 12 Vet.App. 188 (1999); *Turpen v. Gober*, 10 Vet.App. 536, 539 (1997). The veteran must still "submit sufficient evidence of a causal nexus between that in-service event and his or her current disability as required by *Caluza*." *Wade v. West*, 11 Vet.App. 302, 305 (1998) (§ 1154(b) does not obviate the third requirement, e.g., medical evidence of nexus, of a well-grounded claim).

 Although the Board found the veteran's claim to be well grounded, a review of the record by this Court indicates that it is not. The veteran has failed to satisfy *all* three of the elements required for a well-grounded claim. The veteran's current diagnosis of asbestosis is undisputed and satisfies one prong of the test for well groundedness. In the veteran's Form 9, he asserts that he was exposed to asbestos in service while he was being transported on Navy ships and while he was using asbestos ammunition belts to carry weapons which became too hot.

R. at 157. Even assuming, without deciding, that the appellant as a combat veteran could provide competent evidence of in-service exposure, *but see Espiritu v. Derwinski*, 2 Vet. App. 492 (1992) (lay evidence is not competent evidence where expert evidence is required), that would only fulfill another prong of the three prongs of a well-grounded claim test. The veteran still has not presented competent medical evidence of a nexus relating any current disability to his service exposure. *See Caluza* and *Wade*, both *supra.* At best, the physicians' statements of record provide a nexus only between the veteran's asbestosis and his employment with the U.S. Steel Company. Thus, the appellant's claim is not well grounded. Although, the Board erroneously found that the veteran's claim was well grounded, any such error was harmless in view of the ultimate denial of benefits. *Edenfield v. Brown*, 6 Vet.App. 432 (1994).

### B. DVB Circular

The Court notes that VA has provided guidelines in the DVB Circular for rating boards to use when considering asbestos compensation claims. *See Ashford v. Brown*, 10 Vet.App. 120 (1997); *Ennis v. Brown*, 4 Vet.App. 523 (1993); *McGinty v. Brown*, 4 Vet.App. 428 (1993). In its decision, the Board undertook an extensive review of the DVB Circular and its criteria in light of the evidence, including the veteran's service and post-service history, and weighed the credibility of the evidence accordingly. Regarding any argument involving the Board's assessment under the DVB Circular criteria, the Court holds that the Board articulated adequate reasons or bases for its denial of the veteran's claim for service connection for asbestosis. Even if the Board's reasons or bases had been inadequate, any such deficiency would be harmless error because there was "no competent evidence showing that this disease resulted from an alleged exposure to asbestos during service...." R. at 13; *see* 38 U.S.C. § 7261(b) ("[T]he Court shall take due account of the rule of prejudicial error."); *Winters v. West*, 12 Vet.App. 203 (1999); *cf. Ennis*, 4 Vet.App. at 527 (remand was appropriate where BVA failed to consider DVB Circular criteria in its decision); *McGinty*, 4 Vet.App. at 432–33 (Board

did not discuss the DVB Circular and made conclusory statements regarding asbestos exposure without providing any reasons or bases);

Finally, the Court will not entertain the argument raised by the veteran for the first time in his reply brief that the Secretary's construction of the DVB Circular violates the Equal Protection Clause of the Constitution. *See Carbino v. West*, 168 F.3d 32 (Fed.Cir. 1999) (Court of Veterans Appeals properly declined to consider the appellant's contentions which were raised for the first time in the reply brief).

### III. CONCLUSION

Upon consideration of the above, the Court holds that the appellant has not demonstrated that the BVA committed either factual or legal error that requires reversal or remand. *See* 38 U.S.C. §§ 5107, 7104(d), 7261; *Gilbert v. Derwinski*, 1 Vet.App. 49, 52–53 (1990). The November 20, 1996, BVA decision is AFFIRMED.