Citation Nr: 1434264 
Decision Date: 07/31/14 Archive Date: 08/04/14

DOCKET NO. 11-29 194 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUE

Entitlement to service connection for a respiratory disorder, to include asbestosis and chronic obstructive pulmonary disease (COPD), as a result of asbestos exposure. 


REPRESENTATION

Veteran represented by: Alabama Department of Veterans Affairs


ATTORNEY FOR THE BOARD

Journet Shaw, Associate Counsel



INTRODUCTION

The Veteran served on active duty from November 1955 to August 1957.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Montgomery, Alabama, which reopened the Veteran's claim for service connection for asbestosis and denied the claim on the merits.

The Board notes that this appeal has an extensive procedural history and has previously been before the Board twice. In December 2005, the Board denied the Veteran's claim for service connection for asbestosis. In January 2014, as the evidence of record indicated that the Veteran had been variously diagnosed for respiratory disorders, the Board recharacterized the issue on appeal. Then, the Board granted the Veteran's petition to reopen the claim for service connection for asbestosis and remanded the recharacterized claim for service connection for a respiratory disorder, to include asbestosis and COPD for additional development. The development has been completed and the matter has been properly returned to the Board for appellate consideration. See Stegall v. West, 11 Vet. App. 268 (1998). 

The Board notes that this appeal has been processed through the Veterans Benefits Management System (VBMS) electronic paperless appeals processing system.

In August 2009, the Veteran submitted a statement that he was diagnosed in 2004 with colon rectal cancer due to exposure to asbestos. The Board finds that the issue of entitlement to service connection for colon rectal cancer as a result of asbestos exposure has been raised by the record, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2013).


The Veteran failed to report to his requested Board videoconference hearing. He has not since explained his absence or requested another hearing. Thus, the Board will proceed with appellate review.

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2013). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDINGS OF FACTS

1. The Veteran has current respiratory diagnoses for COPD, emphysema and pulmonary mass of uncertain etiology.

2. The preponderance of the competent and credible medical evidence demonstrates that the Veteran's COPD, emphysema and pulmonary mass of uncertain etiology are not etiologically related to his active duty service, including asbestos exposure. 


CONCLUSION OF LAW

The criteria for entitlement to service connection for a respiratory disorder, to include asbestosis and COPD, have not been met. 38 U.S.C.A. §§ 1110, 5107(b) (West 2002); 38 C.F.R. §§ 3.102, 3.303 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Board has thoroughly reviewed all the evidence in the claims file, and has an obligation to provide an adequate statement of reasons or bases supporting its decision. See 38 U.S.C.A. § 7104 (West 2002); Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). While the Board must review the entire record, it need not discuss each piece of evidence. Id. The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. It should not be assumed that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000). The law requires only that the Board address its reasons for rejecting evidence favorable to the claimant. Id. 

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Caluza v. Brown, 7 Vet. App. 498, 506 (1995). Equal weight is not accorded to each piece of evidence contained in the record, and every item of evidence does not have the same probative value. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. Id. 

I. Duties to Notify and Assist

VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2013); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002); Dingess v. Nicholson, 19 Vet. App. 473 (2006). )

The VA satisfied its duty to notify when it issued letters in August 2009 and September 2009, prior to the rating decision, informing the Veteran of all five elements of service connection, gave examples of the types of evidence the Veteran could submit in support of his claim, and provided notice of the Veteran's and VA's respective responsibilities for obtaining such evidence. The correspondence also informed him of how disability ratings and effective dates are assigned, if service connection was to be granted. See Dingess v. Nicholson, supra. The Board notes that the correspondence also included information specific to substantiating a claim for asbestos exposure. 

The Board concludes that the duty to assist has been satisfied. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). The Veteran's service treatment records, military personnel records, post-service VA and private treatment records, and lay statements are in the file. The Veteran has not identified any other outstanding records that he wanted VA to obtain or that he felt were relevant to the present claim. 

In May 2002 and March 2010, the Veteran was afforded VA examinations to determine the nature and etiology of any current respiratory disorder. A VA addendum opinion was also provided in May 2014. The VA examinations and opinion are adequate, as they are predicated on a review of the claims file, an interview of the Veteran, and examination findings supported by a complete rationale for the opinions stated. Id.; see 38 U.S.C.A. § 3.159(c)(4).

VA has provided the Veteran with every opportunity to submit evidence and arguments in support of his claim. The Veteran has not identified any outstanding evidence that needs to be obtained. All relevant evidence necessary for an equitable disposition of the Veteran's appeal of this issue has been obtained and the case is ready for appellate review. 

II. Service Connection

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). 

In some cases, service connection may be established by showing evidence of a chronic disease in service, which requires a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. 38 C.F.R. § 3.303(b). If chronicity in service is not established, a showing of continuity of symptoms after discharge is required to support the claim. Id. The United States Court of Appeals for the Federal Circuit has held that the provisions of 38 C.F.R. § 3.303(b) pertaining to continuity of symptomatology can be applied only in cases involving those conditions explicitly recognized under 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

In order to establish service connection for a claimed disorder on a direct basis, there must be competent evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the disease or injury incurred or aggravated during service. See Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004). 

There is no specific statutory or regulatory guidance with regard to claims for service connection for asbestosis or other asbestos-related diseases. However, in 1988, VA issued a circular on asbestos-related diseases which provided guidelines for considering asbestos compensation claims. See Department of Veterans Benefits, Veterans' Administration, DVB Circular 21-88- 8, Asbestos-Related Diseases (May 11, 1988). The information and instructions contained in the DVB Circular have since been included in VA Adjudication Procedure Manual, M21-1, part VI, para. 7.21 (October 3, 1997) (hereinafter "M21-1"). Also, an opinion by VA's Office of General Counsel discussed the development of asbestos claims. VAOPGCPREC 4-00 (April 13, 2000).

The Board notes that the aforementioned provisions of M21-1 have been rescinded and reissued as amended in a manual rewrite (MR) in 2005. See M21-1MR, Part IV, Subpart ii, Chap. 1, Sec. H, Para. 29, entitled "Developing Claims for Service Connection for Asbestos-Related Diseases," and Part IV, Subpart ii, Chap. 2, Sec. C, Para. 9, entitled "Service Connection for Disabilities Resulting from Exposure to Asbestos."

VA must analyze the Veteran's claim of entitlement to service connection for a respiratory disorder, to include asbestosis and COPD, under these administrative protocols using the specified criteria. Ennis v. Brown, 4 Vet. App. 523, 527 (1993); McGinty v. Brown, 4 Vet. App. 428, 432 (1993). The latency period for asbestos-related diseases varies from 10 to 45 or more years between first exposure and development of disease. The exposure may have been direct or indirect, and the extent or duration of exposure is not a factor. M21-1MR, Part IV, Subpart ii, Chap. 1, Sec. H, Para. 29a.

The manual provisions acknowledge that inhalation of asbestos fibers and/or particles can result in fibrosis and tumors, and produce pleural effusions and fibrosis, pleural plaques, mesotheliomas of the pleura and peritoneum, and cancer of the lung, gastrointestinal tract, larynx, pharynx and uro-genital system (except the prostate), with the most common resulting disease being interstitial pulmonary fibrosis (asbestosis). Also noted is the increased risk of bronchial cancer in individuals who smoke cigarettes and have had prior asbestos exposure. As to occupational exposure, exposure to asbestos has been shown in insulation and shipyard workers, and others including workers involved in the manufacture and servicing of friction products such as clutch facings and brake linings. The clinical diagnosis of asbestosis requires a history of exposure and radiographic evidence of parenchymal lung disease. M21-1MR, Part IV, Subpart ii, Chap. 2, Sec. C, Para. 9a-f.

The Veteran contends that while serving aboard a naval ship as a boilerman, he was exposed to asbestos and, as a result, he developed asbestosis. Specifically, he asserts that as a boilerman, he cleaned the boiler, repacked the valves with asbestos insulation, and scrapped and repainted the boiler room. He said that there was nothing but asbestos in the boiler room. He said he only wore paper masks for protection. See February 2002 statement and August 2004 Board hearing transcript.

The Board notes that the Veteran's military personnel records also reflect that he was assigned to duties aboard the U.S.S. Alvin C. Cockrell from April 1956 to July 1957. The Veteran's Form DD 214 indicates his military occupational specialty (MOS) was as a boilerman. Therefore, the Board finds that the Veteran's assertion that he was exposed to asbestos while in service appears credible and consistent with the circumstances of his service. 

Upon entrance into service, the Veteran noted a history of whooping cough, chronic or frequent colds, and chronic cough on his November 1955 medical history. He also stated his health was "good." A physician noted that the Veteran coughed occasionally, had no hemoptysis and no significant symptoms. The Veteran's November 1955 enlistment examination found normal clinical evaluation results and noted no respiratory conditions. At his August 1957 separation examination, the only other service treatment record, there were no respiratory complaints, treatment or diagnosis. 

An October 1991 private treatment record reflects that the Veteran complained of dyspnea associated with a productive cough of brown phlegm. He also reported intermittent night sweats. The private treating physician, Dr. Mitchell, noted that the Veteran had a 20-year history of smoking ten cigarettes a day. The Veteran also had a post-service occupational history of working at shipbuilders and shipyards from 1972 to 1981. Dr. Mitchell noted that the Veteran had regular exposure to asbestos working in the pipe and insulation departments. Objective findings of his chest examination revealed normal excursion; no rales, rhonchi or wheezing were heard; and no auscultation, but he had decreased breath sounds at both bases. An October 1991 chest x-ray, by the Veteran's private radiologist, revealed mild to moderate bilateral lateral thoracic wall pleural thickening, mild to moderate interstitial pulmonary fibrosis involving the inferior half of each lung, and bilateral bronchial wall thickening. Based on the radiologist's findings and impression, Dr. Mitchell diagnosed the Veteran with pulmonary asbestosis. 

VA treatment records dated April 1998 to January 2002 reflect the Veteran's complaints of respiratory problems, but no chronic respiratory disease diagnosis. An April 1998 VA treatment record documents a history of bronchitis three weeks earlier, which was treated with antibiotics and resolved. A June 1998 VA treatment record reflects that the Veteran had stopped smoking and noted that his chest was clear. A January 1999 VA treatment record noted the Veteran's complaints of cough productive of yellow sputum, nasal congestion and feverish aching. The VA treating physician found that his sinuses were not tender, his neck had no tender adenopathy, and his chest was clear. The VA treating physician noted a possible diagnosis of influenza or bronchitis and prescribed antibiotics. A January 1999 VA chest x-ray report noted normal heart size, clear lung fields and no effusions or pneumothorax. The impression was no acute cardiopulmonary findings. A March 2000 VA chest x-ray report noted normal heart size, unremarkable mediastinum, clear lungs, and open angles. The impression was no active cardiopulmonary disease process. 

At a May 2002 VA examination, the Veteran described handling asbestos while working with insulation in the boiler room aboard the naval ship during his active duty service. He reported having no respiratory problems until the early 1990's, when he started noticing shortness of breath with physical exertion. He also said he had mild productive cough with clear sputum. He explained that his private treating physician diagnosed him with lung asbestosis. He also reported his pack-a-day smoking habit until he quit in 1998. Upon objective evaluation, the VA examiner found no evidence of clubbing, trachea was central, chest was symmetrical, lungs were clear to auscultation without rales, rhonchi or wheezing and his heart was regular with no murmur. His chest x-ray was normal, but a pulmonary function test revealed moderate obstructive disease. The VA examiner found a history of asbestos exposure, but no lung asbestosis was radiologically detected and no other lung disease was clinically detected. 

A December 2002 private radiologist report reflects the findings of the Veteran's chest study. Based on the findings, the private radiologist's impression was bilateral interstitial fibrosis consistent with pneumoconiosis. 

A March 2005 private treatment record from Providence Hospital documents that the Veteran continued to complain of some dyspnea upon exertion, but no chest pain, syncope, palpitations, nausea or vomiting. A chest examination showed his lungs were clear to auscultation. His chest x-ray showed mild hyperexpansion suggesting underlying chronic obstructive pulmonary disease. He was diagnosed with dyspnea and found to be stable. 

An October 2007 statement from a private physician, Dr. Kronenberg, provided an opinion on the Veteran's respiratory condition after reviewing medical records provided by the Veteran. Dr. Kronenberg specifically noted the Veteran's post-service occupational history working as an insulator for a shipbuilder and found that he had significant occupational exposure to asbestos. Dr. Kronenberg also noted the Veteran's prior history of cigarette smoking and the October 1991 chest x-ray findings which showed moderate moderately severe airway obstruction with significantly reduced diffusion. Based on his review of the Veteran's records, Dr. Kronenberg opined, in pertinent part, that "within a reasonable degree of medical probability that the Veteran was diagnosed with asbestosis [and] asbestos related pleural disease...all caused by his exposure to asbestos." 

At a March 2010 VA examination to determine the nature and etiology of any current respiratory disorder, the Veteran reported symptoms of dyspnea with exertion and a productive cough with dark sputum. The VA examiner, after interviewing the Veteran and his claim file, did not find that the Veteran had asbestosis or any other asbestos-related disease. The VA examiner noted that the Veteran had a "high probability" of asbestos exposure based on his MOS as a boiler operator. His post-service occupation working in the shipyard was also noted. The VA examiner also noted his 20-year history of cigarette smoking. Upon objective evaluation, the VA examiner found that the Veteran's lungs were clear to auscultation except occasional rhonchi. His chest x-ray revealed mild increased density in both infrahilar areas; had the appearance of chronic atelectasis; and showed some degree of chronic obstructive disease. Pulmonary function testing revealed mild reduced forced vital capacity (FVC) at 76 percent, moderately reduced forced expiratory volume in one second (FEV-1) and a normal FEV-1/FVC ratio. The overall impression was noted as a moderate obstruction. The VA examiner diagnosed the Veteran with COPD. Based on a finding that COPD did not cause asbestosis, the VA examiner opined that it was less likely as not that the Veteran's COPD was related to asbestos exposure in service. 

In May 2014, the Veteran underwent new diagnostic testing. A new VA opinion was provided in May 2014 to address the Veteran's prior asbestosis diagnosis by his private treating physician and to determine whether the Veteran had a current disease related to asbestos exposure. In connection with the new VA opinion, the Veteran underwent a pulmonary function test (PFT) and chest CT. The PFT showed a moderate obstruction with air trapping and normal lung volumes. His diffusion capacity of the lung (DLCO) was moderately reduced. His chest CT showed a mild paraseptal and centrilobular emphysematous changes of the lungs with a single, approximately 4 millimeters well-circumscribed left lung pulmonary nodule. The VA examiner noted that the Veteran had a prior diagnosis of asbestosis in 1991 and a pneumoconiosis diagnosis in 2002. However, the VA examiner found that, currently, there was no evidence to support these diagnoses. The VA examiner opined that the Veteran's current diagnoses of COPD, emphysema, and pulmonary mass of uncertain etiology were less likely than not due to the Veteran's period of active duty service including asbestos exposure. The VA examiner based her opinion on the medical evidence that asbestos exposure was not a recognized cause of emphysema or COPD; that tobacco smoking was the most common cause of COPD, with other factors, such as air pollution and genetics; and that the Veteran had a 20-year history of tobacco smoking. The VA examiner also noted that the new diagnosis of pulmonary mass of uncertain etiology was a new development and required surveillance. 

The Veteran asserts that he has asbestosis which was caused by exposure to asbestos during his active duty service. However, the Veteran has not demonstrated that he has any knowledge or training in diagnosing or determining the etiology of such conditions. In other words, he is a layman, not a medical expert. The Board recognizes that there is no bright line rule that laypersons are not competent to offer etiology opinions. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009) (rejecting the view that competent medical evidence is necessarily required when the determinative issue is medical diagnosis or etiology). Evidence, however, must be competent evidence in order to be weighed by the Board. Whether a layperson is competent to provide an opinion as to the etiology of a condition depends on the facts of the particular case.

In Davidson, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) drew support from Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) for support for its holding. Id. In a footnote in Jandreau, the Federal Circuit addressed whether a layperson could provide evidence regarding a diagnosis of a condition and explained that "[s]ometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007).

The Board finds that the question of whether the Veteran currently has a respiratory disorder due to his asbestos exposure in service is too complex to be addressed by a layperson. The condition and etiology are not amenable to observation alone. Rather it is common knowledge that such diagnoses and relationships are the subject of extensive testing and research by scientific and medical professionals. Hence, the Veteran's opinion of the nature and etiology of any current respiratory disorder is not competent evidence and is entitled to low probative weight.

Here, the Board finds that the March 2010 VA examination and May 2014 VA opinion are the most probative evidence of record regarding the nature and etiology of the Veteran's current respiratory disorder. The VA examiners both found that the Veteran did not have a current respiratory disorder, including asbestosis, related to asbestos exposure. Although the May 2014 VA examiner noted the Veteran's prior diagnoses for asbestosis and pneumoconiosis, current diagnostic testing did not show findings for these conditions. The Board finds that the Veteran does have a current respiratory disorder, however, his COPD and emphysema diagnoses were not found to be diseases related to asbestos exposure. Rather, COPD was specifically found to be most commonly caused by tobacco smoking and notably the Veteran had a 20-year history of cigarette smoking. The Board acknowledges that a diagnosis of an asbestos-related respiratory disorder can be latent, however, the evidence demonstrates that almost 60 years after the Veteran's discharge from service, there is no current diagnosis for asbestosis or any other asbestos-related respiratory disorder. 

The Board observes that there is an October 2007 opinion from Dr. Kronenberg finding that the Veteran had a diagnosis of asbestosis and that this respiratory disorder was related to his asbestos exposure. Nevertheless, the Board finds that this opinion is less probative than the opinions of the March 2010 and May 2014 VA examiners. Dr. Kronenberg's opinion that the Veteran had asbestosis was based not on current radiographic evidence, but on medical records provided to him by the Veteran of a diagnosis made several years earlier. Furthermore, Dr. Kronenberg's opinion that the Veteran's respiratory disorder was related to asbestos exposure was not specifically found to be related to any in-service asbestos exposure. Thus, the October 2007 opinion has little probative value. 

Finally, the Board also finds that the Veteran is not entitled to service connection for a respiratory disability based on any other incident of service other than asbestos exposure. The Board notes that the Veteran's service treatment records show no complaints, treatment, or diagnosis of respiratory problems during service or upon his discharge. Indeed, the Veteran explained, at his May 2002 VA examination, that his respiratory problems did not begin until more than 30 years after separation from service. Moreover, the May 2014 VA examiner attributed the Veteran's current COPD diagnosis to his long history of cigarette smoking. 

Even assuming that the Veteran's COPD is related in part to cigarette smoking during active service, the Board notes that Congress barred service connection on the basis that a disease or injury is attributable to the use of tobacco products during service, excepting only Buerger's disease. 38 U.S.C.A. § 1103; 38 C.F.R. § 3.300. 

Therefore, as the preponderance of the evidence does not support a finding that the Veteran has a current respiratory disorder related to his active duty service, to include asbestos exposure, the Board finds that the Veteran's claim for service connection for a respiratory disorder, to include asbestosis and COPD, is not warranted. Consequently, the benefit-of-the-doubt rule does not apply. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102 (2013); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).









ORDER

Entitlement to service connection for a respiratory disorder, to include asbestosis and COPD, as a result of asbestos exposure is denied. 



____________________________________________
K. PARAKKAL
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs